No. 12,200.

### GEORGE MEYERS VS. ILLINOIS CENTRAL RAILROAD CO.

A railroad company having had transient cars of other companies in its use or employment regularly inspected, condemned and ordered to be sent to its shops for repairs, and had them properly tagged so as to warn its employees of that fact, has not fully discharged its obligation of due care toward one engaged in the performance of night service as a car coupler unless the tags are of such a size and character as to bring the condemnation of the cars to his attention, or he is otherwise informed of the fact.

APPEAL from the Civil District Court for the Parish of Orleans. Rightor, J.

---

*F. M. Gill*, for Plaintiff, Appellee.

---

*Farrar, Leake & Lemle*, for Defendant, Appellant.

---

Argued and submitted on November 5, 1896.
Opinion handed down November 16, 1896.
Rehearing refused January 4, 1897.

---

The opinion of the court was delivered by

WATKINS, J. This suit is for the recovery of fifteen thousand dollars damages for personal injuries sustained by the plaintiff, whose left arm was crushed while engaged in coupling an oil tank car to an ordinary freight car in the defendant's government yard in the city of New Orleans at 1:05 A. M., on the 31st of July, 1895.

Meyers vs. Railroad Co.

On the trial there was a verdict of the jury in favor of the plaintiff for five thousand dollars and the defendant has appealed. The defendant's counsel filed a motion for a new trial on the ground that the verdict of the jury is clearly contrary to the law and the evidence, but the judge *a quo* declined to grant it on the ground that, during the twenty years he had occupied the bench, he could not "recall a single instance where the second trial, or even the third verdict, differed materially from the preceding one.   *   *   * It is of interest to the republic that there shall be an end of litigation."

In this court the plaintiff and appellee has filed an answer to the appeal, and prays that the amount awarded be increased to fifteen thousand dollars, as originally claimed.

The averments of the petition are substantially that, being engaged as an employee of the defendant "as freight car coupler," and, in consequence of having his arm crushed while engaged in coupling defendant's cars, it was necessarily amputated just below the elbow.

The charge of fault and negligence on which he rests his claim to damages are as follows, viz.:

"The machinery and appliances of the freight car were worn and defective, the draft timbers broken, and the drawhead gave way and went under the car; and the bumper of the oil tank car, on the right side of the train, came in contact with the deadwood of the freight car, to which petitioner was to couple the same, causing the aforesaid casualty.

"That said casualty occurred in the city of New Orleans, in the government yard of said company, on the old main line, and continuation of Calliope street, about half a mile beyond the site of the old depot.

"Petitioner is informed and believes, and so alleges, that on or about the 26th of July, 1895, said freight car and its machinery and appliances had been inspected, condemned and ordered to the shops by the inspector of said company."

His petition then particularizes the defects in said freight car and the causes of the accident thus, viz.:

"That said freight car was without grab-irons, or hand-holds, not only usual and necessary but required for the greater security of the men in coupling and uncoupling cars, and for the prevention of all

accidents. That it was dark and no light to guide petitioner save that of a small lantern held by himself."

Petitioner avers that he was guilty of no fault, but that the aforesaid injury and damage were occasioned solely by the worn and defective machinery and lack of requisite appliances, and by the gross carelessness, fault, negligence and want of skill on the part of the defendant, its officers and agents.

Defendant's answer avers that plaintiff was not injured through the negligence of its officers or agents, but, on the contrary, that any injury he suffered while he was engaged in coupling its cars was solely due to his own negligence and want of due care.

It specially denies that plaintiff suffered any injury on account of the want of hand-holds or grab-irons on the said cars, or that said alleged injury was caused by the want of proper light. That if said cars were defective or unfit for service, or had been examined, condemned and ordered to be sent to the shops, such fact or defect was patent upon the cars themselves, and if plaintiff had used his sense of sight he would have had full knowledge thereof. But that if such was not the case the defendant's answer shows that the "plaintiff, by taking employment in (its) service, assumed the risks incident thereto."

The facts gleaned from the record are substantially as follows, viz.:

At 1:05 A. M. of the night of the 31st of July, 1895, the plaintiff and another employee of the defendant were engaged as switchmen in coupling cars in the government yard; and whilst thus employed in coupling a box car of the Richmond & Danville Railroad Company No. 1406, to an American Cotton Oil Company's car No. 521, the accident happened to the plaintiff. The R. & D. car was attached with other cars to a locomotive which was, at the time, slowly moving, while the A. C. O. car was stationary.

The plaintiff is a professional switchman and car-coupler, and had been employed as such, for many years by the Louisville & Nashville and Northeastern Railroad Companies, prior to his employment in that service by the defendant a few months since.

He had assigned to him a night watch, which was the occasion of his being engaged in coupling cars at the hour of 1:05 A. M.; and the only light afforded him was that of a small lamp, which he customarily carried in his hand or under his arm while thus employed.

This service may be deemed hazardous and consequently dangerous, requiring the exercise of skill and care on the part of employees; and it may be correctly assumed that such employees take the risk of such dangers as are necessarily and commonly incident thereto.

Appertaining to the accident and the cause of it, the plaintiff as a witness states, that in attempting to make the aforesaid coupling, he took a position on the right side of the track, coupling with his left arm; and the drawhead closing in, the bumper caught his arm and mashed it, so that it had to be amputated.

Explaining further he states, that draft timbers are used for the purpose of holding the drawhead in position so that the coupling of the cars can be effected. That one of the draft timbers is placed on one side of the drawhead, and one on the other.

That they are made of wood, 4x6 generally, and about three feet in length. The deadwood is the block on top of the drawhead.

On this occasion he says the draft timbers gave way, and consequently the drawhead dropped down and went under the A. C. O. car and missed the coupling, and the bumper caught his arm and crushed it. That his arm was caught between the deadwood of the R. & D. car and the bumper of the A. C. O. car. That the bumpers are so placed as to save the car coupler from getting hurt. That he attempted to make the coupling by setting the pin on the A. C. O. car, which was standing still, and when that car and the R. & D. car came togetherhe threw the link upward to catch the pin and complete the coupling. That the pin did not fall when he threw his hand up, and the cars came together so quick that he did not have time to get his arm out. Says he had set the pin in the oil tank car, and held his lantern in his right hand and threw the link of the R. & D. car up as it approached, with his left hand, but the pin would not drop, as it was fast in the hole; but he could not say what caused it.

He affirms that if the drawhead of the R. & D. car had been in good conditi n, in his opinion the latter and the bumper of the oil tank car would not have come together.

Another employee of the defendant says that when the moving car is slacking up to a stationary car for a coupling and the drawheads meet each other, there is a spring which gives way slightly, so as to allow them to meet gently, but that the bumpers do not come together.

That it is impossible for a man to couple the cars when they come together to any extent.

Another of plaintiff's witnesses, and an employee of the defendant as foreman of the switch gang in the government yard, states that he saw and examined the cars in question on the morning of the accident at about the hour of eight o'clock.

" Q. What was the condition of the R. & D. car, No. 1406?

"A. It was shopped; it was on the shop track; and, also, a tank car next to it. The draft timber on the south end of the car and on the up-town side was smashed and broken in, and that allowed the drawhead to go in from its place—the draft timber being smashed."

States that the drawhead of the R. & D. car had gone in some three or four inches, out of its regular position for coupling; that this permitted the deadwood and the bumper to come together.

Another of defendant's witnesses, and an employee of the defendant as inspector of freight cars, states that he was in the service of the company at the time of plaintiff's accident, and was engaged in inspecting cars in defendant's government yard. States that on the 26th, previous to the happening of the accident on the 31st of July, 1895, he examined and condemned R. &. D. car No. 1406, and ordered it sent to the shop for repairs, and prepared and placed upon it a shop-card marked " Shop O. D.," with this further endorsement, viz.: " R. & D. 1406, D. bolts and D. timb. B-K." He explains this last endorsement to mean, " draft bolts and draft timber broken." He states that the writing on the card is his own, and that, at the same time, he made the following entry in his memorandum book, which he identified, viz.:

" 1406 R. D. One deadwood and one draft timber, two draw sills split. One draft timber broken, and one draft timber split and broken. One draft timber strap gone. Four draft bolts broken."

The testimony of several witnesses supports the statement of the last witness with regard to the posting of a shop card on the R. & D. car, notwithstanding the plaintiff's denial of any knowledge of its existence.

But conceding the fact, that the R. & D. car had been previously examined and condemned as unfit for service in the particulars that are enumerated, and that an appropriate card had been prepared and posted, the fact remains that the appliances for the coupling of

the cars were badly broken and in a very crippled condition, and wholly unsuitable for use, to the knowledge of the company, and had been for five days prior to the date of the accident.

There is no doubt of the fact that these broken and defective appliances was the proximate and immediate cause of the accident and of plaintiff's injury, and the question to be solved is whether plaintiff had due and proper notice of the aforesaid defects, or could, by the exercise of proper care and caution, have ascertained their existence and avoided the accident.

In our opinion the plaintiff did not have proper notification of the defects in the draft timbers which caused the accident. The weight of the evidence supports the proposition that in the then condition of the draft timbers a coupling of the cars was a practical impossibility. That the broken and split draft timbers failed to hold the drawhead of the R. & D. car in a proper position, and consequently when it approached the A. C. O. car the pin in the latter refused to drop into its place, thus preventing the coupling of the two cars.

Accepting this theory it seems quite apparent that there was no mode of escape for the plaintiff other than to have declined the attempt to make the coupling at all, and this he affirms he would have done had he been advised of the true situation.

One of the witnesses says that, in his opinion, the accident could have been avoided by making the coupling *underneath* the drawhead—holding the link *under* the car. But he does not say that this is an usual or customary manner of making a coupling, and no other witness affirms that proposition; and no witness undertakes to affirm that the plaintiff was unskilful or careless in the performance of his duties.

Conceding that the shop card was properly posted and endorsed, and that this was full and complete warning to all switchmen and car-couplers that the R. & D. car was disabled and unfit for service, it did not convey notice of the existence of broken and split draft timbers which rendered the coupling extra hazardous, if not well nigh impossible.

An inspection of the original shop-card, which was brought up with the transcript in the original, discloses that the endorsement thereon, viz.: "No. 1406 D. Bolts, and D. timb. B. K." are written with a pencil, and very indistinctly; so much so that the characters

can not be readily deciphered, except by the aid of explanatory testimony. To our thinking, if the plaintiff had been sufficiently an expert in that line to have deciphered them with ease—which, however, is not shown—it was a physical impossibility for him to have done so, with the aid of the light of a small lamp to dispel the darkness, and on the spur of the moment, the car slowly approaching.

It seems to us to be perfectly clear, that the duty was imposed upon the defendant during the five days which intervened between the date of inspection and that of the accident, to have taken some better means than those employed, to warn its employees on a night watch of the danger that existed in attempting to couple this R. & D. car, notwithstanding it was in its government yard and destined to the shop for repairs.

The facts of this case bring it fairly within the principles announced in Towns vs. Railroad Company, 37 An. 630, which involved quite a similar question of damages for personal injury suffered by the plaintiff's son while engaged in coupling idle cars on the company's track.

In stating the law applicable to such a case the court said that the controlling weight of authority consecrates the principle " that while the railroad company is not the insurer of its employees and is not necessarily bound to employ the best possible means and appliances, it is bound to exercise reasonable and ordinary care to provide such suitable and safe apparatus as common experience shows to be proper in order to avoid exposing the lives of their employees to unnecessary danger in the discharge of their hazardous duties."

Now while the cars in question did not belong to the defendant in the sense of property, they were in its government yard, and had been inspected and condemned by its inspector and tagged for its shop for repairs. And while it was under no duty to see to it that they were furnished with proper appliances for coupling, it was under an obligation to properly and sufficiently forewarn its employees and car couplers who were employed in night service, of the hazard and peril there was in coupling them in their then defective and unsafe condition.

The case of Britton vs. Railway Company, 47 Minn. 340, is applicable also. Clairain vs. Telegraph Company, 40 An. 178.

In Myhan vs. Electric Light Company, 41 An. 964, we said that " the servant is not required to know latent, but only patent defects.

Actual knowledge must be established by the master, on whom rests the burden of proof.''

In Hough vs. Railway Company, 100 U. S. 213, the Supreme Court said the obligation is on '' the master not to expose the servant when conducting his business, to the perils or hazards against which they may be guarded by proper diligence upon his part.''

The distinction between the instant case and that of Railroad Co. vs. Bowles, 71 Mississippi, 1003, is found in this, that in the latter case it was found as a fact, that the cars to be coupled '' were without drawheads and *chained together;* '' and this fact was appreciable on casual inspection, as the accident did not occur at night.

The two cases are easily differenced by the instructions the defendant's counsel requested the judge to give to the jury, but which was refused, viz.:

''That plaintiff could not recover if Bowles knew of the defective condition of the cars that killed him and voluntarily exposed himself to danger; that if he was careless, and guilty of contributory negligence, causing injury, plaintiff could not recover'' (p. 1005).

And so in Arnold vs. Canal Company, 125 N. Y. 15, it was said:

''In attempting to couple the cars, one of which had a broken drawhead, in order that the latter might be placed on the (cripple) track, plaintiff was injured. The defect might easily have been seen.''

In Goodrich vs. Railroad Company, 116 N. Y. 398, the court said that '' plaintiff, a brakeman in defendant's employ, while engaged in coupling a car received from another road to cars on defendant's track, was injured. In an action to recover damages it appeared that the accident resulted from the fact that the bumper of the said car was out of order so that it hung lower than the one of the car to which it was being coupled. *Held:* That the company was chargeable with negligence.''

In that case no inspection and condemnation of the foreign cars had been made so as to relieve defendant from the obligation of care to defendant's employees; but had such an inspection and condemnation been made, as was done by the defendant in this case, the defendant in that case would not have relieved itself from responsibility without taking adequate means to advise its employees of the ex sting defects.

Having given all the authorities cited due consideration, under

the facts we have related, our opinion is that defendant is chargeable with negligence, and consequently responsible in damages to the plaintiff.

The plaintiff is a comparatively young man of thirty or thirty-five years of age, and has the prospect of twenty-five or thirty years longer to live. At the time of the accident he was in excellent health, and by means of his avocation was earning $2.50 per day, or an average of $65 per month of twenty-six working days, or $750 *per annum*. By reason of this accident he suffered great pain and his left arm was amputated just below the elbow, thus rendering him incapable of performing the duties of his avocation. He is and has been since the accident out of employment, and has an aged mother dependent on his exertions for support.

We are of opinion that the award of the jury is correct and should remain undisturbed.

Judgment affirmed.