No. 13,719.

R. M. WALMSLEY & CO., IN LIQUIDATION, VS. W. P. THEUS AND W. W. ARMISTEAD—JAMES BRICE ET ALS., THIRD OPPONENTS; R. M. WALMSLEY & CO., IN LIQUIDATION, VS. NORMAN F. THOMPSON ET ALS., AND W. W. ARMISTEAD VS. JAMES BRICE ET ALS. (CONSOLIDATED.)

## SYLLABUS.

1. A creditor who, by making a partial payment to another holding a prior special mortgage on certain property, has become legally subrogated *pro tanto* to the rights of the latter, is subrogated subordinately to the rights of that creditor to be paid the balance of his debt.

2. A legal subrogation to rights by payment is derived from "the law" not from the consent of the party who receives payment. The fact that the creditor who has received the payment has written the words "paid" or "cancelled" upon the particular mortgage note for which he has received payment, does not prevent legal subrogation taking place in favor of the person making the payment, if he be otherwise entitled to it. Other creditors cannot urge such fact in their own favor when the mortgage remains uncancelled upon the record.

3. The law does not take note of the origin of the moneys with which a payment is made which carries legal subrogation with it as its effect; legal subrogation takes place though the payment be made by money borrowed by the party making the payment or furnished to him by another person for that purpose.

4. A third possessor who pays off special mortgages existing on property at the time of its acquisition, becomes thereby legally subrogated to the rights of the mortgagee who has been paid and the subrogation is not lost because the third possessor may be subsequently evicted. The character and effect of the payment which attached to it when made remain unaffected.

5. A prior mortgage creditor who intervenes by third opposition under a sale made by a junior creditor and claims the proceeds of sale by preference, consents thereby to a transfer of his mortgage rights from the property to the proceeds sale in the hands of the sheriff and he cannot claim that, under Art. 684 of the Code of Practice, the price bid was insufficient to carry the title and entitle the purchaser to a deed.

### ON REHEARING.

1. The wife had paraphernal interests to protect. She obtained a judgment of separation of property. The *dation* to her by her husband was annulled. She, none the less, retained the administration of her separate interest, as the judgment of separation was not null in so far as it dissolved the community and gave her the right to manage her separate interests.

2. She became the owner of a separate interest in property owned by her husband (she was his creditor) and for that reason had the right to pay a debt against him and to legal subrogation, provided it did not come in

conflict with the transferror's mortgage, who retained, under the rule which controls legal subrogation, all his rights on notes unpaid in his hands.

3.   The owner has an interest that his property be sold for an amount sufficient to pay mortgages in rank superior to those of the seizing creditor. The sale is null when made for less than the amount of the mortgage first in rank.

A PPEAL from the Third Judicial District, Parish of Bienville—*Richardson, J. ad hoc.*

*J. Rush Wimberly* and *Andrews & Hakenyos,* for R. M. Walmsley & Co., in Liquidation, Appellees.

*Dormon & Reynolds,* for W. P. Theus, Appellant.

*Pierson & Pierson* and *L. K. Watkins,* for W. W. Armistead, Appellee.

*J. C. Theus,* for Mrs. Hattie E. Singleton and her husband and the minor children, heirs of Mrs. Maggie V. Theus, deceased, and James Brice, Appellants.

The opinion of the court was delivered by NICHOLLS, C. J.

On rehearing by BREAUX, J.

### STATEMENT OF THE CASE.

NICHOLLS, C. J.   The following extract is taken from the reasons for judgment assigned by the District Court for the judgment rendered by it in this case:

In these consolidated cases is involved a contest for the proceeds of the sale of certain real and personal property based on alleged priority of mortgage and privilege.

On the 19th day of October, 1891, William P. Theus executed a conventional mortgage to Norman F. Thompson, of New York City, on 2880 acres of land and building and improvements thereon, situated in Bienville Parish, Louisiana, to secure the payment of a loan made by said mortgagee, amounting to seventy-six hundred and eighty-nine and

9-100 dollars ($7689.09), evidenced by promissory notes or bonds, as follows, viz:

One for $68.50, due December 1st, 1891.

One for $1240.00, due December 1st, 1892.

One for $1121.61, due December 1st, 1893.

One for $1013.50, due December 1st, 1894.

One for $914.30, due December 1st, 1895.

One for $823.00, due December 1st, 1896.

One for $738.92, due December 1st, 1897.

One for $660.05, due December 1st, 1898.

One for $588.17, due December 1st, 1899.

One for $520.64, due December 1st, 1900.

All payable in gold—principal and interest—at the Merchants' and Farmers' Bank, Shreveport, La.

Other stipulations not material to the questions at issue were incorporated in this mortgage, which was duly recorded October 24th, 1891, in mortgage book "F," page 600, of Bienville Parish, La.

The notes or bonds thus secured were made payable to the mortgagee, "Norman F. Thompson or order," and bear 5% interest before and 8% interest after maturity.

On the 28th day of December, 1891, the said mortgagor, William P. Theus, executed another or second conventional mortgage on the same real property to secure the payment of two promissory notes, each for twenty-five hundred and forty-nine and 30-100 dollars, aggregating $5098.00. This mortgage was duly recorded in the mortgage office of Bienville Parish.

On the 25th day of June, A. D. 1896, this mortgage was rendered executory by a judgment of this court, which embraced an additional sum of $2000.00, with 8% per annum interest on same from November 2nd, 1891, subject to a credit of $642.73, July 17th, 1893, and costs of suit. This judgment is against "W. P. Theus and W. W. Armistead *in solido.*"

On the 11th day of November, 1898, a writ of *fi. fa.* was issued on this judgment, and the sheriff of Bienville Parish siezed this mortgaged property and the personal property shown by his returns. After due advertisement, the sheriff adjudicated the mortgaged property to W. W. Armistead for $4981.00 on the 31st day of December, 1898. Personal property was adjudicated as follows: To W. W. Armistead for $375.00; to James Brice for $368.25.

The deputy sheriff declined to execute an act evidencing said adjudi·cation of the 2840 acres of mortgaged realty, for the alleged reason that the bid of Armistead was not sufficient to cover the prior mortgage to Norman F. Thompson, shown by the mortgage certificate to be still on record.

On the 28th day of September, 1898, R. M. Walmsley & Co., in Liquidation, instituted suit No. 1804 in this court against Norman F. Thompson *et als.*, alleging that all the installments secured by the prior mortgage, except the last three unmatured notes, had been paid and that the prior mortgage had been, to that extent, extinguished. And plaintiff prayed that it be so decreed, and the mortgage erased.

On the 22nd day of June, 1899, W. W. Armistead instituted suit No. 1863 in this court against James Brice *et als.*, alleging the payment and cancellation of the Norman F. Thompson notes maturing prior to 1898 and the extinguishment of said mortgage, *pro tanto.*

Said Armistead alleges his purchase of the mortgaged land, his tender of payment of the price of adjudication, and makes necessary allegations and parties to complete his alleged *inchoate* title.

He puts at issue the third opposition of James Brice individually and as under-tutor of the minor children of Mrs. Maggie V. Theus, deceased, and the opposition of Mrs. Hattie E. Singleton. The opposition of James Brice alleges ownership of the Norman F. Thompson notes maturing in 1896 and 1897, respectively, and that he is subrogated to the rights of Norman F. Thompson's mortgagee and prays for judgment accordingly.

The oppositions of the heirs of Mrs. Maggie V. Theus make like claims of the notes maturing in 1893 and 1894 and 1895 in favor of the said Norman F. Thompson mortgages.

These oppositions were filed December 31st, 1898, the day of sale of the mortgaged property.

On the 10th day of March, 1899, James Brice filed suit No. 1842 against W. P. Theus, alleging indebtedness of defendant, W. P. Theus, to him; insolvency of defendant, and averring that he had paid the Norman F. Thompson prior mortgage notes maturing in 1892, 1896 and 1897, and was and is therefore subrogated to all the rights of the original payee and mortgages.

His prayer is that his claim be enforced on the mortgaged property.

The various suits and oppositions were at issue in all essential mat-

ters; and a voluminous record contains the evidence to guide the court to a final conclusion and judgment.

Of the many claims and counter-claims but few are material for the consideration of the court. Chief among these are the third opposition of Captain James Brice and of the heirs of Mrs. Maggie V. Theus, whose contentions involve the question of extinguishment *vel non* of the Norman F. Thompson notes and prior mortgage on the land in question for the years 1892, 1893, 1894, 1895, 1896 and 1897.

It is in evidence that the note due in 1892 was paid without any endorsement or assignment and that the endorsement, " The within note was paid by Captain James Brice, 12-19-92," was placed there at the instance of W. P. Theus, after he got the note. See evidence, page 52.

The note due in 1893 was or is marked " cancelled." " Cancelled " on its face in stamped letters.

The note due in 1894 is stamped " Paid Dec. 13, 1894. Delta Trust and Banking Co., Vicksburg, Miss."

The note due in 1895 is stamped " Cancelled," " Cancelled," " Cancelled," " Cancelled," on its face.

The note due in 1896 is likewise stamped " Cancelled," " Cancelled," " Cancelled," " Cancelled," on its face, and " Cancelled," " Cancelled," on its back.

The testimony of P. M. Harding, of Vicksburg, Miss., taken by commission at the instance of R. M. Walmsley & Co., in Liquidation, is material, and I quote as follows:

Answer to first Interrogatory:

" I am a resident of Vicksburg, Mississippi, and am president of the Delta Trust and Banking Company."

Answer to Interrogatory No. 2:

" I am agent for the Equitable Securities Company of New York in the matter of collecting their loans and looking after their real estate in this State and Louisiana."

Answer to Interrogatory No. 3:

" The Theus loan is in the territory and I look after the collection of that along with others, though the papers are not in my possession, but when payments are made to me I order the papers from New York."

Answer to Interrogatory No. 4:

" I have no recollection of any agreement with Mrs. Theus to subrogate the rights of the holders of the notes to her in the event of her paying the notes."

Answer to Interrogatory No. 5:

" It has been our policy to not subrogate our rights to third parties in the State of Louisiana until the whole of the indebtedness might be paid, and in this event the holders of the notes would be willing to assign them without recourse."

Answer to Interogatory No. 6:

" Seven notes in the Theus loan have been paid, all of which have been marked paid and cancelled, with the exception of the note maturing December, 1897, which was paid by Captain James Brice, with the understanding that we would hold this note until all of the remaining notes in the loan were paid by him, when the 1897 note and the balance, if paid by him, were to be assigned to him, without recourse."

Answer to Interrogatory No. 7:

" All of the notes that may have been marked paid or cancelled were so marked purposely and not through error."

Answer to Interrogatory No. 8:

" I have had correspondence with some of the parties named."

Answer to Interrogatory No. 9:

" I have forwarded letters with my answers to Messrs. Dorman and Reynolds, and refer you to them, as it would take considerable time to get up the correspondence again."

Answer to Interrogatory No. 10:

" I have no instruction in reference to assigning any of the notes to Mrs. Theus, but, as stated before, there is an agreement with Captain James Brice by which the notes maturing December, 1897, with the remaining notes in the loan, were to be assigned to him, provided he pay the remaining notes, and whenever the last note in the loan has been paid."

Answer to Interrogatory No. 11:

" The notes were marked paid or cancelled in accordance with our usual custom and not through error."

Answer to Interrogatory No. 12:

" The Theus loan has been in my charge as agent for the Equitable Securities Company since about 1894. I have received no instructions from my principals in reference to subrogating notes—in fact, I would have no authority to subrogate notes in Louisiana."

Answer to Interrogatory No. 13:

" It is my understanding that Norman F. Thompson has properly assigned these notes to the Equitable Mortgage Company and that they

were in turn assigned by said company and its receivers to the Equitable Securities Company, who are the present holders of the notes."

Answer to Interrogatory No. 14:

" As I do not know the dates of the assignments, I am unable to answer this question."

### Cross-Examination.

Answer to Cross-Interrogatory No. 1:

" Notes are usually assigned by a form of assignment executed by Norman F. Thompson, as it was not customary for him to write an assignment on the back of each note, for owing to the great number of notes this would consume considerable time and labor, and an assignment of the whole loan would suffice."

Answer to Cross-Interrogatory No. 2:

" The notes are payable to Norman F. Thompson or order."

This evidence is conclusive of the intentions and acts of lender and loan company. Recognizing the well settled laws of Louisiana providing that the transferrors of a part of a series of mortgage notes cannot compete with their transferrees in the distribution of the proceeds of the mortgaged property, they declined to subrogate any one to their rights as original mortgagees, by convention, or to allow the possibility of legal subrogation. This is evidenced not only by the above quoted testimony and the letters to Messrs. Dorman and Reynolds on the subject, but also by the stamped " Cancellation " or " Paid " on the notes.

This conclusion is not changed by the rather contradictory and irreconcilable evidence found in the record on other branches of these consolidated cases.

But the note in favor of Norman F. Thompson, " or order," maturing in 1897 was not extinguished by payment as were those of the preceding years, but was, or is, held by the assignee of Norman F. Thompson, and the payment of same acknowledged to have been made by Captain James Brice, third opponent, to whom it is to be transferred upon payment of the subsequently maturing notes, due in 1898, 1899 and 1900. This is a conditional agreement to transfer the note with subrogation, but the conditions have not happened.

But Article 2161 of the Civil Code provides: " Subrogations take the place of right."

" 1. For the benefit of him who, being himself a creditor, pays another creditor, whose claim is preferable to his by reason of his privilege or mortgage."

In Ziegler vs. His Creditors, 49 Ann. 188, the court held:

"After all, on this question is not the Code itself enough? Its conciseness of expression that subrogation takes place in favor of the creditor who pays another whose debt is preferable by reason of his privilege or mortgage, would certainly seem to preclude any aid for interpretation. We think reason and authority, as well as the text of the Code, sustain our opinion that gives the bank in this case, the creditor of Ziegler, the subrogation of that mortgage securing the debt the bank discharged."

In the case above quoted the "bank" was an ordinary creditor, as in the case now under consideration.

While Captain Brice does not seem to have been a very exacting or careful creditor, owing to the relationship, it is conclusively established that he was and is a creditor of the mortgagor for a large amount, and hence had an interest in making the payment, if subrogation would result.

The evidence does not lead to a like conclusion on the other oppositions filed by the heirs of Mrs. M. V. Theus, deceased.

In the 4th R. 416, it is correctly held that the maker of mortgage notes cannot pay them, thereby extinguishing the mortgage and reissue them to a third party with the same mortgage security.

The oppositions of the Fleming Company are supported by the evidence for what are necessary plantation supplies—less the credits which must be applied to the privileged debts.

For these reasons there will be judgment sustaining the opposition of Captain James Brice to the extent of the Norman F. Thompson note due December 1st, 1897, as a legal subrogation and reserving whatever rights he may have on claims for interest paid on subsequently maturing notes. In other respects his opposition will be rejected.

The oppositions of the minor heirs of Mrs. Maggie V. Theus, represented by James Brice, under-tutor, and of Mrs. Hattie E. Singleton and husband will be rejected with costs.

The oppositions of the Fleming Company will be sustained for legally necessary plantation supplies, less lawful credits shown to have been paid.

There will be judgment in favor of W. W. Armistead ordering the clerk, *ex officio* recorder of Bienville Parish, to cancel and erase the mortgage, reserving the Norman F. Thompson notes due in 1891, 1892, 1893, 1894, 1895 and 1896, and ordering the sheriff of Bienville Par-

ish, La., to make and execute a *proces verbal* and act of sale of lands and improvements embraced in the adjudication of December 31st, 1898. And of the personal property adjudicated to him and others to the parties to and on the terms of said adjudication.

R. M. Walmsley &, Co., in Liquidation, will have judgment ordering the same cancelled, as ordered in favor of W. W. Armistead.

Costs, including fees due curator *ad hoc,* to follow judgment.

(Nos. 1534, 1804 and 1863, consolidated. In Bienville Parish. Opinion of the court. Special District Judge. Filed September 17th, 1900. F. L. Mayfield, Deputy Clerk, District Court.)

### OPINION.

This case comes before us with all the documents connected with a number of suits which were consolidated and tried together in the District Court. When it reaches this court the issues are much narrowed. We understand them to be confined:

1st. To a demand made by W. W. Armistead, who purchased the property sold in the matter of Walmsley & Co., in Liquidation, vs. W. P. Theus and W. W. Armistead, to have the sheriff execute to him a deed in conformity with the adjudication and the law.

2nd. A demand by Walmsley & Co. to have the special mortgage in favor of Norman F. Thompson, executed on the 19th of October, 1891, to secure the payment of a number of promissory notes, declared extinguished and the record thereof erased, and that they be paid by preference over all other persons the price of the property sold.

3rd. A third opposition by James Brice, claiming to be paid out of the funds in the hands of the sheriff by preference over Walmsley & Co., the seizing creditors, the sum of $823, with interest, attorney's fees and costs, and the further sum of $738.72, with interest, attorney's fees and costs, as having paid two of the notes secured by said mortgage, to-wit: the notes due in December, 1896 and 1897, and by said payment having become subrogated to all the rights of the holders of notes.

4th. A third opposition of the children of Mrs. Maggie V. Brice, deceased wife of W. P. Theus, the seized debtor, claiming to be paid by preference over Walmsley & Co. out of the fund in the hands of the sheriff the sum of $1121, with interest, attorney's fees and costs, the further sum of $1058, with interest, attorney's fees and costs, and the further sum of $914.30, with interest, attorney's fees and costs, by rea-

son of their mother having paid three of the notes secured by said mortgage, to-wit: the notes due in December, 1893, 1894 and 1895, and by said payment having become subrogated to all the rights of the holders of said notes.

The district judge found as a fact that James Brice was a creditor of W. P. Theus and that by reason of that fact he was entitled to be paid with subrogation the amount represented by the promissory note due in December, 1897, but he held that he was not entitled to take with subrogation any other or greater sum out of the hands of the sheriff.

He was of the opinion that Mrs. Maggie V. Brice, wife of W. P. Theus (and her children claiming under her), were not entitled to be paid anything whatever out of the fund in the hands of the sheriff. He ordered the sheriff to execute a deed of sale to W. W. Armistead, as purchaser of the property sold in execution of the judgment of Walmsley & Co., in Liquidation, vs. W. P. Theus and W. W. Armistead.

The judge seems to have been of the opinion that unless the holder of the notes, at the time of their payment, had *consented* to a "transfer" of the same to the person making payment and had made an assignment of the notes paid with subrogation, there could be no subrogation.

That if the holder of the notes had agreed to make such a transfer, with subrogation to a party making a partial payment, if he or she should pay the balance due on the notes at the time of the final payment, no payment with subrogation could take place until these conditions had been fulfilled.

The judge did not, in his judgment, express any opinion whether, as "a matter of fact," James Brice had paid any of the notes, other than the one due in December, 1897, nor whether, as a matter of fact, Mrs. Maggie V. Brice, wife of W. P. Theus, or her children, had paid any one of the notes. He was of the opinion that no matter who may have paid the seven Norman F. Thompson notes shown to have been paid, they became, by the fact of payment, absolutely extinguished as to all parties, and the extinguishment of the notes carried with it simultaneously the extinguishment of the mortgage, that the words "cancelled," "paid," written upon the notes negatived the fact that any transfer or assignment of the notes had been made by the holder of the notes at the time of their payment to either Brice or Mrs. Theus.

We concur in opinion with the district judge that, at the date of the payment of these notes, James Brice was a creditor of W. P. Theus. For the purpose of determining whether he was entitled to subroga-

tion, if he paid any of these notes which were secured by a mortgage having preference over any claim which he had at the time of that payment, the "amount" of that indebtedness does not enter as a factor.

If Brice was, in point of fact, a junior creditor of Theus and he did, in point of fact, pay the mortgage notes which he claims to have paid, there would be no necessity for any act of transfer or assignment of the notes with subrogation to be made to him by Thompson, the Equitable Security Company or the Delta Trust Company. "Payment with subrogation" would result, *ipso facto,* from the fact of the payment by force *of the law itself* independently of any consent thereto by the holders of the note or notes paid. There may be occasions where, by reason of special circumstances, the holder of notes would be legally justified in refusing to receive payment of the same from one who, by virtue of the payment made by him, would be entitled to subrogation; cases where such subrogation would work injury to the party receiving the payment, but this case presents no exceptional features of that kind. The creditor received and did not refuse payment of some of the notes and no injury could result to it by according subrogation to the party making the payment. The party or parties making the partial payments would, as between themselves and the holder of the notes which they had paid, be subordinated to the rights of the latter.

There is no contest in this case between them. The contest is between other parties. The holder of the unpaid notes has refused to take part in the litigation between Walmsley & Co. (junior creditors) and the seized debtor and stands upon its mortgage rights to be hereafter enforced.

The contest is over the fund now in the hands of the sheriff and between other parties. The holders of the unpaid notes do not assert any claim upon that particular fund. We attach no importance to the fact that the holder of the paid notes should, when he received payment of the same, have written the words "cancelled," "paid," upon them. The notes were, in point of fact, "paid" as between W. P. Theus and the holder, but they were not extinguished or paid as between W. P. Theus and the party or parties making the payment of the holder. The latter could not prevent the placing of these words upon the notes, and they were not prejudiced by that fact in the absence of their having given consent to an absolute extinguishment of the notes

The mortgage has never been erased from the records and Walmsley & Co. were, *ab initio,* subordinated to the legal rights of the holders of the notes secured by mortgage in the Norman F. Thompson mortgage act, whether these notes should be held by the original holders or held by other parties by effect of payment with subrogation. They took their mortgage with knowledge that the Norman F. Thompson notes and mortgage primed their own. They did not deal with W. P. Theus upon the faith of any portion of the Thompson notes having been extinguished. (Dalloz & Verge, under Art. 1251, No. 99) cites Civ. C. 20 Juin, 1859, I., 254, to the following effect:

"L'acquéreur est subrogé a tòus les droits du créancier qui ne sont pas éteints d'une maniere définitive a l'égard des autres créanciers ainsi lors même que mainlevée de l'hypotheque a été donné par le créancier au tiers acquéreur s'il n'y a pas eu radiation cette hypotheque passe à l'àcquereur, la mainlevée étant pour les autres créanciers *res inter alios acta* dont ils ne peuvent invoquer le bénifice."

We now direct our attention to the ascertainment of the circumstances under which the seven Thompson notes which have been shown to be paid were paid, and by whom they were paid. We are satisfied that W. P. Theus, the maker of the notes and the mortgage debtor, did not pay them himself, though he may have served as the instrument or channel through which the payment was made. The evidence shows that he was without means to pay them and there is no doubt that the funds with which they were paid. were funds furnished by James Brice. Theus, at the time of these payments, was hopelessly embarrassed. In consequence of that fact his wife had obtained from him a separation of property and he had made to her a *dation en paiement* of this property. After this separation had been obtained, she executed to him a notarial power of attorney of the most general character and conducted a mercantile establishment, her husband acting as her agent, in conducting the same. This she had the legal right to do. The *dation en paiement* made to her by her husband was based upon the fact that her husband was indebted to her by reason of certain amounts which had been furnished to her husband by her father and which the former had used in his business which it was supposed were gifts or advances which had been made to the daughter by the father. Creditors of the husband attacked the *dation en paiement* as not having had a legal basis to rest upon. The court held that no matter what might have been the intentions of the

father, they were not made to appear in a shape such as to authorize it to consider the funds which had been furnished by the father other than as loans made to the husband.

The court, therefore, set aside the *dation en paiement*.

The Norman Thompson notes which fell due in December, 1893, 1894 and 1895, were paid while the legal title to this property stood in the records in the name of the wife and while she was in business herself. They were paid by monies furnished by her father, not to the husband, nor for his benefit, but to the wife and for her benefit. This fact, we think, clearly established by the evidence. It matters not whether these funds reached the holder of the notes through the instrumentality of W. P. Theus who, though the debtor, was then her agent, or whether the amounts were paid by checks on Brice. The fact to be ascertained is not "how" the funds were paid, but who actually paid them. The manner in which the payment was made; the instrumentality through which the mere act of payment was made, may embarass the solution of that question as a matter of proof or evidence, but they do not affect the legal result when it has been ascertained that the payment was in reality made by the wife and for her benefit. The situation, when these notes were paid, had materially changed from what it was when Brice, before the separation of property, had been obtained, had furnished money to his son-in-law, W. P. Theus. The latter was no longer in business, he was hopelessly embarrassed, he was then acting as the agent of his wife under notarial power of attorney. It was the daughter and not the son-in-law who was then in business, and it could not be reasonably supposed that the father under these circumstances, would advance to the son-in-law instead of his daughter. There is no uncertainty in Brice's testimony on that point and none in that of the husband. The monies to make the payment were drawn by checks or drafts made by Moreland, the bookkeeper, not of the husband, but of the wife, and for the wife and not for the husband. Would the fact that the payment was made with monies received by the wife from her father affect the legal situation as to subrogation, if the payment was in fact made by her? That question has been raised in France and decided in the negative. "The law," says Laurent (Vol. 18, Section 78) "takes no note of the origin of monies with which the payment was made, whether it be borrowed or not." We think that payment of the notes falling due in 1893, 1894 and 1895 were made by the wife.

Did that payment carry subrogation with it? It is very clear that she was not a volunteer in making the payment and that it was not her intention to absolutely extinguish the debt. She had an interest or supposed she had an interest as holding the legal title to the property and third possessor thereof in making the payments she did. Third possessors of mortgaged property, who pay the mortgage debts existing thereon at the time of the acquisition of the same, are subrogated to the rights of the mortgage creditors so paid. Did the fact that the *dation en paiement* was set aside do away with the effect of the subrogation? We think not. We think the payment takes its character at the period of its being made and that it is not altered or affected by the subsequent eviction of the third possessor. We are of the opinion that the three notes falling due in December, 1893, 1894 and 1895, were paid by Mrs. Maggie V. Brice, wife of W. P. Theus, and that by said payment she became subrogated to the rights of the holder of the notes at the time of their payment. Even were this not the case, the District Court would still be in error in its judgment as to the claim of the heirs of Mrs. Maggie V. Theus, to subrogation. They would, under any circumstances, be entitled to subrogation upon the notes which fell due, one in December, 1894 and 1895. The payment made by her of the note which fell due in December, 1893, made her a creditor of her husband to that extent. The subsequent payment made by her of the notes which fell due in December, 1894 and 1895, gave rise to legal subrogation in her favor as to those two notes, under the first paragraph clause of Article 2161 of the Civil Code. We think the note of 1896 was paid in the same way, but the heirs of Mrs. Maggie V. Theus do not claim the benefit of that payment, and James Brice does, who, we think, cannot claim it.

We are of the opinion that the note which fell due in December, 1897, was paid for his own account by James Brice, who, at the time of said payment, was a junior creditor of W. P. Theus, and that by said payment he became subrogated to the rights of the holder of that note at the time of its payment.

The District Court erred in directing the payment of any portion of the funds in the hands of the sheriff to the Equitable Securities Company. They expressly declined participating in the proceedings of Walmsley & Co. in liquidation and have not asked to take any portion of the funds. They must be left free to exercise their legal rights independently of the seizure and sale made herein.

We are of the opinion that the District Court did not err in directing the sheriff to make a deed to W. W. Armistead on the property involved in this litigation under the adjudication made to him at the sheriff's sale in execution of the judgment of Walmsley & Co. in liquidation in these proceedings. James Brice and the heirs of Mrs. Maggie V. Brice, deceased wife of W. P. Theus, having appeared in these proceedings by third opposition, they, by so doing, consented to transfer the mortgage rights which they held upon the property sold (those held by subrogation to the mortgage rights securing the notes which fell due in December, 1893, 1894, 1895, 1896 and 1897) to the proceeds in the hands of the sheriff. The inscription of the mortgage on the property sold, resulting from the act of mortgage granted by W. P. Theus to Norman F. Thompson by notarial act of the 19th October, 1891, before George E. Young, notary public, should be *pro tanto* erased.

For the reasons herein assigned, it is hereby ordered, adjudged and decreed that James Brice, third opponent herein, be and he is hereby adjudged and decreed to be subrogated to all the rights which originally secured the payment of the promissory note made and subscribed by W. P. Theus, which fell due in December, 1897, and which note (described in third opponent's pleadings) was identified by paraph with the notarial act of mortgage passed on the 19th of October, 1891, by act before George E. Young, notary public, and that he be paid the amount of said note, principal, interest and costs by preference over Walmsley & Co., in liquidation, the plaintiffs and seizing creditors herein, out of the proceeds of the sale made herein in execution of plaintiff's judgment.

It is further ordered, adjudged and decreed, that Hettie E. Theus, wife of Hampton S. Singleton, and Mary Theus, Emma Theus, Maggie Theus, James Theus, Louise Theus and Blanton Theus, children and heirs of Maggie V. Brice, deceased wife of W. P. Theus, and issue of their marriage, third opponents herein, be and they are hereby adjudged and decreed to be subrogated to all the rights which originally secured the payment of the promissory notes made and subscribed by W. P. Theus, which fell due in December, 1893, 1894 and 1895, and which notes (described in third opponent's pleadings) were identified by paraph with the notarial act of mortgage passed on the 19th of October, 1891, before George E. Young, notary public, and that they be paid by preference the amount of said notes, principal, interest and

costs coming to them, by preference over Walmsley & Co., in liquidation, plaintiffs, and seizing creditors herein, out of the proceeds of the sale made therein in execution of plaintiffs' judgment.

It is further ordered, adjudged and decreed, that the mortgage rights securing the payment of the notes which fell due in December, 1893, 1894, 1895, 1896 and 1897, be and they are hereby decreed to be raised from the property mortgaged and be transferred to the proceeds of the said sale and are secured as to payment in favor of the said third opponents of their mortgage claims, and that said mortgage inscription be reduced accordingly.

It is further ordered, adjudged and decreed, that the sheriff of the Parish of Bienville do execute a deed of sale of the property sold herein to W. W. Armistead, adjudicatee at the sheriff's sale, in conformity to the adjudication made to him.

It is further ordered, adjudged and decreed, that the judgment appealed from in so far as it decrees the payment to the Equitable Security Company out of the proceeds of said sale in the hands of the sheriff, be and the same is hereby annulled, avoided and reversed, said company not claiming any portion of the same.

It is further ordered, adjudged and decreed, that the judgment appealed from in so far as it is not altered or amended by the judgment herein made, is affirmed. Costs of appeal to be borne by appellees.

## On Rehearing.

Breaux, J.    There are different stages in this complicated litigation. We take up one of the last.

Following the rule that one who buys property at sheriff's sale may compel all the interested parties to appear in court and contest their claims to the proceeds, the buyer filed a petition and made the creditors of the seized debtor parties to the suit and thereby created, as it were, a *concurso*, instituted with the view of settling the right of all parties concerned.

He averred that neither James Brice, one of the parties, nor the children of Mrs. Maggie V. Theus, deceased, ever acquired any interest in the mortgage first in rank. The mother of opponents, Mrs. Maggie V. Theus, held interest in this property under a *dation en paiement* which was afterward annulled, it is true, but under the theory of our original opinion she was entitled to subrogation as claimed.

But the adjudicatee, Armistead, is pleased to contend that Brice was

originally a debtor of Walmsley & Co. who hold the second mortgage and that, in consequence, he cannot claim preference by legal subrogation. This contention, we take it, is not sustained by the weight of the testimony and the adjudicatee, Armistead, is not in a position to sustain it, for the reason that Brice had been released from his obligation as a debtor of Walmsley & Co., if he ever has been their debtor. Walmsley's mortgage dated from the year 1891, long prior to the legal subrogation Brice claims. If he had been a debtor, Walmsley & Co., by taking mortgage security and accepting other debtors had completely released Brice. This is stated upon the theory that Brice may have been a debtor as just stated. As to this indebtedness we must say that we are not convinced. He unquestionably paid for the note which fell due as stated in our original opinion, and we, therefore, decline to reopen the question regarding his right as a creditor.

This brings us to the claim of the children of Mrs. Maggie V. Theus, opponents.

It had been argued in behalf of the adjudicatee before named that there was no separation of property between Mrs. Maggie V. Theus and her late husband, and that in consequence if she bought the notes secured by mortgage on the property it fell into and became part of the community between her and her husband. True the *dation en paiement* made by her husband to her was annulled. This did not have the effect of annulling the separation of property and that of dissolving the community which she obtained after the *dation* made to her, annulled as just mentioned, even if she had not property rights against her husband. Besides the judgment of separation had legal effect until it is shown that it was illegal. It has every appearance of legality on its face. The judgment must be considered conclusive in so far as it is legal. Jones vs Morgan, 6 Ann. 632.

The wife may protect property she is about to receive if she shows that such a step is necessary because of the disordered condition of her husband's business. Vickers vs. Block, Britton & Co., 31 Ann. 675. The right of the wife to a separation of property is not limited to Art. 2399 of the Code. She may obtain a separation of property in order to protect the return of her industry. Crockett vs. Gale, 7 Ann. 343; Wolf vs. Clark, 10 Ann. 273. The amount made by the wife for the support of her family may find protection under judgment of separation of property, although she actually owns no claim against her

husband.  Davrock vs. Davey, 6 Rob. 344.  The doctrine in Davrock
vs. Davey has been reaffirmed in repeated decisions, 24 Ann. 75.

After the *dation en paiement,* to which we have before referred, she
became the creditor of her husband.  After the issues had been made
up in the case of Ardis & Co. vs. Theus and Armistead, 47 Ann., but
before they had become final, she, from her separate funds, bought the
claims in question.

Owing to the want of care in business of her father, whose only heir
she was, the amounts were handed over to the son-in-law without atten-
tion to legal form to the end of protecting her interest.  She became
the owner of the note payable in 1893.  There was good reason for her
to seek to become its owner.  After she had bought that note she was
beyond all question a creditor of her husband and had an absolute
right as had all the other creditors to become subrogated by legal sub-
rogation.  She was not an anxious and nervous creditor, seeking to take
advantage of her husband's creditor, but as a creditor, only availed
herself of the right the law accords to any creditor.

The book-keeper of the late Mrs. Theus testified that he had paid
the amount for her and that the notes were afterward sent to her.
Other testimony sustains the statement.  To the extent that Mrs.
Theus took up two of the notes, she is entitled to recovery, that is, she
has a right to the principal and interest paid by her, but not to the
interest on the amount since she took up the notes, for then she would
become interested in an account against her husband, a claim not
sanctioned by law.  The wife may acquire a claim against her husband
under circumstances justifying the transfer to her by the creditor, but
the claim ceases to bear interest as it is regarding all other claims by
her against him.

Before leaving this branch of the case, we insert here as controlling
between the transferee and the transferror the following:  The subro-
gation established by the proceeding articles takes place as well
against the sureties as against the debtors.  It cannot injure the
creditor since, if he has been paid but in part, he may exercise his
right for what remains due in preference to him from whom he has
received a partial payment.  C. C. 2162.  This article sets at rest all
question of all advantage over the creditors who transferred their claim.
As relates to the wife, or her heirs, she only recovers that which was
her own in collecting a claim that would have been collected by the
original creditors if the transfer had not been made.

This brings us to a consideration of the validity of the sale of the property, an important question before us on the rehearing.

The mortgage creditors second in rank chose to foreclose without insisting upon the trial of a suit brought to have the prior mortgage erased to the extent that it had been paid and they were entitled to its erasure. The sheriff's return states that the mortgage certificate evidenced a prior mortgage for more than the amount of the bid and that, in consequence, he declined to make a deed to the property. The sheriff, we understand, complied with the law and announced to the bystanders that no adjudication could be made unless the bid covered the prior special mortgage. His return sets forth that he complied with all of the law's requirements in this respect.

The amount bid for the property did not exceed the prior special mortgages. It follows that the offer to sell made by the sheriff cannot be completed in view of the objection pleaded. The Code of Practice is general in the language used. The right to raise the objection is not limited to the mortgage creditors prior in matter of rank of mortgage, but also includes the owner as one to whom the right is given to object.

With reference to a similar ground as the one before us for consideration, Judge Martin, with clearness and precision, said that such a sale was null because no price had been received by the creditor; that there could be no sale without a price. DeArmas vs. Morgan, 3 N. S. 606. This view was subsequently affirmed in another decision in the early days of Louisiana jurisprudence. Balfour vs. Chew, 4 N. S. 162. Subsequently the question was discussed. The court said: "The provisions of law on this subject were designed exclusively for the interest and protection of the owner of the property and those having a real right in it growing out of the property. Whitehead vs. Cramer, 9 Ann. 218."

The right of the owner in this regard was specially referred to in these words: "If a special mortgage or privilege certified to exist, be extinguished, or never attached, the owner or his creditors in case of a surrender may recover the amount." Perry vs. Holloway, 10 Rob. 107. In another case the court held that equity forbids that the buyer shall take property without paying the price, or, on the other hand, if there is no price that then he shall have it sold for the benefit of other creditors. The defendant or special mortgagees might have caused it to be annulled. Laurence vs. Birdall, 6 Ann. 689. In the case from

which we have just quoted exceptions are mentioned which may take a case out of the general rule. The exceptions do not apply to the case before us.

The owner's interest that his property should not be sold at a less price than the law required is obvious. Land and Husband vs. Cameron, 36 Ann. 776.

When the creditor is to take nothing from the proceeds, he is placed in the attitude of causing the sale of his debtor's property to no purpose in so far as he is concerned. This, the Article of the Code on the subject, in effect, lays down, cannot be done and when it occurs, the owner of the property, ordinarily, is prejudiced and can be heard. The sale is for the payment of the creditor's claim. The language of Art. 684 does not seem to contemplate that it shall be considered as valid and binding when another creditor than the seizing creditor is the one to be paid as a result of the offering at the instance of a creditor.

The nullity, it is true, is relative and not absolute. This nullity can be pronounced when all the parties in interest are before the court and the issue of nullity, *vel non,* comes up as in this case before the sale has been completed.

The question, as before stated, grows out of the refusal of the sheriff to give a deed and deliver the property. There is and can be, in our view, no question of damages arising from an illegal seizure or detention of the property, for the seizing creditor had the right to have the property seized and since that time it has been in *gremio legis* for which no one can be held responsible.

It is, therefore, ordered, adjudged, and decreed, that James Brice is recognized as a creditor for the sum which fell due in 1897, decreed in the original judgment, that is of principal on note, interest, and attorney's fee on this note to be entitled to preference over Walmsley & Co.

It is further ordered, adjudged, and decreed, that the heirs of the late Mrs. W. P. Theus are entitled to the notes which matured in 1894 and 1895 and to interest at five per centum per annum, as stipulated from their respective dates to the date they were paid and fee of attorney. That portion of the original decree recognizing her heirs as owners and subrogees as relates to the note of 1893 is stricken out of the original decree and not allowed. The property is burdened also

with the mortgage securing the payment of the notes which matured in 1898, 1899 and 1900.

It is further ordered, adjudged, and decreed, that the adjudication of the property to W. W. Armistead on the fifth of January, 1899, is null and set aside.

As such the judgment heretofore handed down by us in this case is amended to conform with our present decision and decree, and as amended it is affirmed.