No. 735

First Circuit

DECUIR ET AL. v. CARNES

(January 26, 1931. Opinion and Decree.)
(March 3, 1931. Rehearing Granted.)
(October 7, 1931. Question Certified to Supreme Court on Rehearing.)
(November 3, 1931. Correctness of Original Judgment of Court of Appeal Affirmed by Supreme Court.)

Weeks & Weeks, of New Iberia, attorneys for plaintiffs, appellees.

Burke & Smith, of New Iberia, attorneys for defendant, appellant.

ELLIOTT, J. The plaintiffs, Frank J. Decuir, A. Mille Decuir, Thomas R. Gayle, Miss Jeanna Decuir, Mrs. Marie Decuir Weeks, wife of Edward T. Weeks, Mrs. Louise Decuir Patout, wife of Wm. S. Patout, proceeded against the defendant, C. E. Carnes, under the Civil Code, art. 2161, to have him, the said Carnes, compelled to accept from them a tender of the amount due him by Jeff Prados on a mortgage note for $307, with interest and attorney's fees thereon executed and signed by said Prados, and to have themselves, plaintiffs, subrogated of right and by operation of the law to the right, title and interest of the defendant in and to said note and the mortgage whereby it is secured.

The defendant contends that he has the right, before said subrogation is permitted to have effect, to cancel and release from the effect of his said mortgage a parcel of land hereinafter referred to as tract B, and on which the plaintiffs have no mortgage.

There is no dispute about the facts of the case; the dispute is as to the rights of the parties under the law.

The lower court, stating reasons at length for so doing, held in favor of the plaintiffs. Defendant has appealed.

The record shows that defendant is the owner and holder of a note for $307 dated October 2, 1922, drawn and executed by Jeff Prados, secured by a conventional mortgage in authentic form of same date as the note, bearing on the property described as follows, to-wit:

"A certain tract of land together with all the buildings and improvements thereon, situated in the 4th ward of the Parish of Iberia, containing 63 arpents more or less, being the same property acquired by mortgagor from Zenon Decuir."

This mortgage is, in point of registry and rank, the first and highest bearing on said land, and covers the entire tract of 63 arpents, more or less.

The mortgage covers another tract of land, but that fact has no bearing on the question which the court is called on to decide.

The defendant is the owner and holder of a note for $300, with interest and attorney's fees thereon drawn and executed by said Prados, dated July 16, 1929, and secured by conventional mortgage granted by said Prados in authentic form, of same date as the note, bearing upon the property described as follows, to-wit:

(1) A certain tract of land, together with all buildings and improvements thereon and thereunto belonging, and all appurtenances thereof, situated in the fourth ward of the parish of Iberia, containing 32 arpents more or less, bounded north by public road, south by Texas Oil Company, east by mortgagor, and west by C. E. Carnes or assigns, which tract will be hereinafter referred to as tract A.

(2) Another tract of land situated in the same locality containing 32 arpents

more or less, bounded north by public road, south by Texas Oil Company, east by Honore Prados, and west by mortgagor, which tract will be hereinafter referred to as tract B.

These two tracts last described, taken together, make and form the identical 63-arpent tract herein first above described; the original tract having been divided into two tracts of 32 arpents, more or less, each, since the execution of the said first mortgage thereon.

Plaintiffs are the owners and the holders of a promissory note drawn and signed by said Prados for $565.70, with interest and attorney's fees thereon, secured by a conventional mortgage granted by said Prados on the property described as follows, to-wit:

"A certain lot of ground together with all the buildings and improvements thereon and thereunto belonging, and rights, ways and appurtenances thereof, situated in the Parish of Iberia, containing 31 and a fraction superficial arpents, bounded north by property of Fernand Mestayer and Albert Mestayer; south by property of Gustave Loreau; east by that of Gustave Breaussard and west by Jeff Prados,"—which is the same identical tract of land above referred to as tract B.

This mortgage which the plaintiff holds on tract B is, in rank, next after that granted by said Prados on the 63 arpents more or less, in favor of defendant for the purpose of securing said note for $307.

The mortgage situation with reference to the said 63-arpent tract of land shows that defendant, Carnes, has the first mortgage thereon securing said note for $307, and for the purpose of securing his note for $300 he has the second mortgage on tract A and the third on tract B. And

the plaintiffs have for the purpose of securing their note for $565.70 the second mortgage on tract B, but as to tract A they are but ordinary creditors of said Prados.

The plaintiffs hold two other notes for $50 each, drawn and executed by said Prados, secured by a mortgage granted by him on another tract of land. But that matter has no bearing on the present controversy.

The defendant, Carnes, sued out executory process against said Prados on said note for $307 and mortgage securing same, and caused to be seized and advertised for sale the 63-arpent tract, together with another tract of land for the purpose of paying same, and on the same day, immediately afterward, he sued out executory process against said Prados on said note for $300 and mortgage securing same, and seized and advertised for sale to pay said note the tracts A and B, all sales to be made on the same day. But he intended, before the sale would have released tract A from seizure, to pay said note for $307 and cancel his said mortgage on said tract in so far as concerned the amount due him on said note. Therefore, if accomplished, his mortgage securing said note for $300 would have become the first mortgage thereon.

The plaintiffs, however, before he could carry out his purpose, tendered to him the full amount due him by said Prados on his note for $307, in principal, interest, and attorney's fees, and claim as a result of their tender to be subrogated by right and operation of law to the place of said Carnes as the creditor of said Prados on said note for $307, and to all the mortgage rights granted by said Prados on said tract

of 63 arpents, more or less, for the purpose of securing it.

The defendant, Carnes, refused to accept said tender, unless first permitted to release tract A from the effect of said mortgage, contending that, as plaintiffs have no mortgage on tract A, they have no right to prevent him from releasing said part of the 63 arpents, more or less, from the effect of the mortgage granted by said Prados for the purpose of securing said note for $307.

"Subrogation to the right of a creditor in favor of a third person who pays him, is either conventional or legal." Civil Code, art. 2159.

"Subrogation takes place of right:

"For the benefit of him who, being himself a creditor, pays another creditor, whose claim is preferable to his by reason of his privileges or mortgages." Civil Code, art. 2161.

It seems to be the meaning of the law that, where the creditor of the common debtor pays the creditor whose claim is preferable to his by reason of his mortgage, he becomes of right and by the effect of the law the creditor of the common debtor to the same extent as the creditor who is paid and is entitled in the same way to the mortgage rights which gave rise to the preference.

In Zeigler v. His Creditors, 49 La. Ann. 144, 21 So. 666, cited by the lower court in its opinion, and urged by plaintiffs in their brief, the court held that subrogation of right and by operation of the law, when exercised, entitled the ordinary creditor without mortgage to the place of the creditor who had been paid, and to the mortgage rights which gave rise to the preference. After having considered the matter in the main opinion, the court says again on rehearing (page 187 of 49 La. Ann., 21 So. 666, 684):

"It is insisted on the argument for the rehearing that under our law there is no legal subrogation in favor of the ordinary creditor who pays the mortgage creditor of the common debtor."

The court then proceeds to go over the ground again, and reasoning out the matter (page 188 of 49 La. Ann., 21 So. 666, 684), says:

"After all, on this question, is not the Code itself enough? Its conciseness of expression, that subrogation takes place in favor of the creditor who pays another whose debt is preferable by reason of his privilege or mortgage, would certainly seem to preclude any aid for interpretation. We think reason and authority, as well as the text of the Code, sustain our opinion that gives the bank in this case, the creditor of Zeigler, the subrogation to that mortgage securing the debt the bank discharged."

In Hall et al. v. Hawley & Co. et al., 49 La. Ann. 1046, 22 So. 205, 206, the finding which had been made in Zeigler v. Creditors, 49 La. Ann. 144, 21 So. 666, was reaffirmed. We quote from the syllabus as follows:

"The court again affirms that payment of the mortgage debt by the ordinary creditor subrogates him to the rights of the mortgage creditor."

In Walmsley v. Theus, 107 La. 417, 31 So. 869, 873, the question was again considered, and the case Zeigler v. Creditors, 49 La. Ann. 144, 21 So. 666, affirmed, and the court further said:

"Payment, with subrogation, would result, ipso facto, from the fact of the payment by force of the law itself, independently of any consent thereto by the holders of the note or notes paid."

It is seemingly evident that the effect of subrogating the plaintiffs of right and by the operation of the law to the place of said Carnes as the creditor of said Prados in the matter of said note for $307, and as entitled to enforce the mortgage rights granted by said Prados for the purpose of securing it, will be to enable the plaintiffs to benefit themselves in a way which will operate to the prejudice of' the defendant's mortgage granted him by said Prados for the purpose of securing said note for $300, and in that connection we noted the language in the Walmsley case, page 427 of 107 La., 31 So. 869, 873:

"There may be occasions where, by reason of special circumstances, the holder of notes would be legally justified in refusing to receive payment of the same from one who, by virtue of the payment made by him would be entitled to subrogation,—cases where such subrogation would work injury to the party receiving the payment,—but this case presents no exceptional features of that kind."

But the opinion shows that the court, in saying as quoted, evidently had in mind a situation where there were several outstanding notes secured by the same mortgage, and in which all the creditors had the same right on the property; one of them could not, by virtue of the·subrogation, be held to have any greater right than the party from whom he had obtained some of the notes. In this case we can but interpret the law and give effect to its meaning.

The judgment .appealed from is, in our opinion, correct.

Judgment affirmed; defendant and appellant to pay the costs in both courts.