(138 So. 103)

**DECUIR** et al. v. **CARNES** et al.
No. 31513.

Nov. 3, 1931.

Weeks & Weeks, of New Iberia, for plaintiff.

Burke & Smith, of New Iberia, for defendant.

ODOM, J.

The facts certified by the judges of the Court of Appeal in the above-styled case are as follows:

Jeff Prados owns 63 arpents of land in the parish of Iberia. It seems that he purchased 31½ arpents of this land at one time and the balance on another date, and while the two purchases were separate, the land acquired in both comprises one tract.

But as some of the mortgages involved in this suit operate on the 63-arpent tract as a whole and others on one or the other of the parts separately, the separate parts, for convenience, are designated "A" and "B."

Jeff Prados, the landowner, is indebted to both plaintiff and defendants, the indebtedness to each being represented by notes secured by mortgage on his land.

The defendant Carnes holds a note for $307, which operates as a first mortgage on the entire 63-arpent tract, or on both tracts A and B.

The plaintiff Decuir holds a note for $565.70 secured by a second mortgage on tract B.

The defendant Carnes owns also a note for $300, which is secured by a mortgage on the entire 63-arpent tract, including both tracts A and B. This mortgage, being of a subsequent date, operates as a second mortgage on tract A and a third mortgage on tract B, so that the claims of these two creditors, Carnes and Decuir, are ranked as follows:

Carnes' claim for $307 ranks first on both lots A and B.

Decuir's claim for $565.70 ranks second on lot B, and Carnes' claim for $300 ranks second on lot A and third on lot B.

Carnes proceeded by executory process to foreclose his first mortgage of $307 and had both lots A and B seized and advertised for sale. At the same time he sued out executory process on his $300 mortgage and had both lots A and B seized and advertised for sale.

Prior to the date set for the sale of the property, Decuir, who, as said, held the second mortgage on lot B, tendered to Carnes the full

amount due him on the note for $307 which operated as a first mortgage on both lots A and B, with the request that Carnes subrogate him to all his rights as first mortgage creditor on both lots.

Carnes was willing to accept the tender and to subrogate Decuir to his rights as first mortgage creditor only in so far as lot B was concerned. He conceded that Decuir had the right to pay and take up his first mortgage note for $307, but he contended that inasmuch as Decuir had no claim against lot A he was not entitled to a subrogation of the first mortgage in so far as it affected that lot. Decuir, on the other hand, contended that there could be no split or part subrogation of the mortgage, and that upon his paying the entire amount due thereon he was entitled to be subrogated to all the rights and privileges which Carnes held as first mortgage creditor, that is, to hold the first mortgage on both lots.

Carnes agreed to accept the payment with subrogation, provided Decuir would agree that the first mortgage on lot A be canceled.

The controversy brought on litigation between Decuir and Carnes which we deem unnecessary to discuss. Suffice it to say that the district judge held that Decuir's contentions were well founded in law and ordered Carnes to accept the tender made by Decuir and to transfer to him said note for $307 "in its entirety, together with the said mortgage of October 2, 1922, securing its payment and as *bearing on all the lands described in said act of mortgage.*" (Italics ours.)

The case was appealed to the Court of Appeal and the judgment of the district court was affirmed. The court later granted a rehearing and after doing so propounded to this court the following interrogatory, "Have we decided the case correctly?"

Our answer is, "Yes."

Article 3183 of the Civil Code provides that:

"The property of the debtor is the common pledge of his creditors, and the proceeds of its sale must be distributed among them ratably, unless there exist among the creditors some lawful causes of preference."

Under article 2161 of the Code, legal subrogation takes place of right:

"For the benefit of him who, being himself a creditor, pays another creditor, whose claim is preferable to his by reason of his privileges or mortgages."

Decuir and Carnes were both creditors of Prados. Carnes' claim for $307 was preferable to that of Decuir by reason of Carnes' mortgage.

It seems to be conceded that an inferior creditor has the legal right to pay the claim of a superior creditor.

■■ One of the contentions made on behalf of Carnes is that inasmuch as Decuir had no mortgage or other preference right against a part of Prados' property on which his first mortgage operated, Decuir had no right to be subrogated to the first mortgagee's rights upon such property.

The contention is without merit. The rights and privileges granted under article 2161 of the Code are open to all inferior creditors, whether common or preferred, whether their claims be secured or unsecured.

■ Decuir's claim was secured by a second mortgage on one of the lots. But if his claim had been wholly unsecured, he still had the right to pay the superior claim of Carnes and become legally subrogated to Carnes' rights. The right of legal subrogation "extends to every case where a person pays a debt which he has an interest in discharging." Duchamp v. Dantilly, 9 La. Ann. 247. In the case of Zeigler v. Creditors, 49 La. Ann. 144,

page 188, 21 So. 666, 684, Justice Miller, on application for rehearing, said:

"The whole reasoning on which this legal subrogation rests points to the ordinary creditor as entitled to it, and excludes the contention that the legal subrogation is restricted to the second or third mortgage creditor, who pays the debt secured by the elder mortgage."

■ When an inferior creditor pays the claim of one who has a superior claim by virtue of a privilege or mortgage and thereby becomes legally subrogated of right to the rights and privileges of such superior creditor, he thereafter stands in precisely the same situation, legally, as to such claim as the superior creditor stood before the payment. He steps into the shoes, so to speak, of the one whose claim he paid. He may use all the means, exhaust all the remedies to collect the debt which were available to the superior creditor.

Applying the above principles to the case at bar, we have this situation: Carnes had the first mortgage on both lots A and B and therefore for the collection of his debt could have seized and sold either or both. Decuir has the right under the law to pay Carnes' claim with subrogation. When and if he does, he may do precisely what Carnes could have done.

The following cases support this view: Zeigler v. Creditors, supra; Walmsley v. Theus, 107 La. 417, 31 So. 869; Tildon v. Dees et al., 9 La. Ann. 250; Baldwin v. Thompson et al., 6 La. 474; King v. Dwight, Executor, 3 Rob. 2; Bank v. Compress Co., 43 La. Ann. 814, 9 So. 442.

■ The other contention made by Carnes is that whereas ordinarily a creditor of inferior rank has the legal right to pay the claim of a creditor whose claim is preferable to his by virtue of a mortgage or privilege, this right could not be exercised by Decuir in the present case to the prejudice of his (Carnes')

rights under his $300 mortgage, which was inferior in rank to the one Decuir sought to take up.

The answer to this contention is that if Decuir had the legal right to take up and pay the first mortgage, and that, as said, seems to be conceded, such right is not taken from him by the mere fact that he (Carnes) held another mortgage of an inferior rank. So far as this $300 mortgage held by Carnes is concerned, he occupies no better position than a third person who might hold it.

■ It would hardly be contended that if some person other than Carnes had held the $300 note, such third person could have prevented Decuir from taking up Carnes' first mortgage with full subrogation. The right granted an inferior creditor to pay a claim of a preferred creditor and to be subrogated is not affected by the mere fact of the existence of other inferior creditors of the common debtor. The Code provides that the subrogation takes place "For the benefit of him who, being himself a creditor, pays another creditor, whose claim is preferable to his." Article 2161.

The theory of this subrogation is that the inferior creditor has an interest in the property of the debtor, which is the common pledge of both, and as was said in Zeigler v. Creditors, supra: "Until the superior mortgage debt is discharged, the creditor of inferior rank gets nothing. He is concerned, therefore, in making that payment of the superior debt which prevents a sacrifice of the common pledge, and affords the creditor who makes the payment the opportunity to make the property bring enough to pay and leave a surplus after the superior debt is satisfied."

■ A preferred creditor whose claim is paid by one of the inferior creditors of the common debtor cannot dictate the terms of the subrogation which result from the payment so as to favor the other inferior creditors; nor can he thus favor himself by specifying that the subrogation, which is not conventional but legal, shall not operate to the prejudice of another claim held by him, but which is subordinate in rank to the one he transfers.

■ When subrogation takes place under article 2161 of the Code, the law fixes the effect and extent thereof. This is "legal subrogation" and takes place only in favor of an inferior creditor who pays another creditor whose claim is superior in rank.

In cases of conventional subrogation, which takes place when the creditor receives payment of his claim from a third person (article 2160, C. C.) conceivably he might restrict its effects by covenant.

But not so in legal subrogations, which take place *of right*.

The question propounded is, "Have we decided the case correctly?" Our answer is, "Yes."

O'NIELL, C. J. (concurring).

I concur in the decree rendered in this case; but my opinion is that Carnes may prevent Decuir's becoming subrogated to Carnes' mortgage of $307, and may protect his (Carnes') mortgage of $300 by paying Decuir's note of $565.70 and becoming subrogated by law to the mortgage securing it. The reason for that is that, if Decuir pays Carnes' note of $307, Carnes, as the holder of the $300 note, secured by the junior mortgage on both tracts of land (being the second mortgage on one and the third mortgage on the other tract), will have the right, immediately, to pay both of the notes ($565.70 and $307) which Decuir will then hold, and become subrogated to the mortgages securing them.