171 So. 553

RECONSTRUCTION FINANCE CORPORA-
TION v. THOMSON et al.

THOMSON et al. v. RECONSTRUCTION
FINANCE CORPORATION.
No. 33639.

Nov. 30, 1936.

Rehearing Denied Dec. 21, 1936.

2

Edwin F. Gayle, of Lake Charles, for appellants.

McCoy, King & Jones, of Lake Charles, for appellee.

ROGERS, Justice.

The record is made up of four suits which were consolidated for trial in the district court, a separate judgment being rendered in each suit.

The first three suits were foreclosures by executory process, with the Reconstruction Finance Corporation as the plaintiff and J. S. Thomson, Mark F. Thomson, and the Thomson Gin Company, Inc., as the respective defendants. The fourth and last suit was one by J. S. Thomson and Mark F. Thomson against the Reconstruction Finance Corporation. Alleging fraud and want of consideration, the defendant in each of the first three suits obtained an injunction without bond, restraining the sale of the mortgaged property. In the fourth and last suit, the plaintiffs, alleging fraud and misrepresentation, obtained a preliminary injunction restraining defendant from selling certain shares of stock and mortgage notes which they had pledged as collateral security for the mortgage notes sued on in one of the foreclosure suits.

The Reconstruction Finance Corporation, answering the several proceedings for injunctive relief, denied the allegations of fraud and misrepresentation and want of consideration. It averred that, without the knowledge of any equities or claims existing in favor of plaintiffs in injunction, it acquired the mortgage notes and their collateral for a valuable consideration, before maturity, as pledgee of the Calcasieu National Bank in Lake Charles.

After a trial upon the merits, the judge of the district court found that the rights of the Reconstruction Finance Corporation had been acquired before maturity and that it was a pledgee in good faith. Accordingly, he rendered judgment against the defendants in the first three suits and against

plaintiffs in the fourth and last suit. From those judgments, the parties cast are prosecuting this appeal.

We are satisfied from our examination of the record that the findings of fact by the judge of the district court are correct. The facts, briefly stated, are these:

J. S. Thomson and Mark F. Thomson were members of a partnership operating under the name of the Thomson Gin Company. The partnership owned two unencumbered cotton gins, and the partners owned, individually, real and personal property, sufficient in amount to carry on their business. The Calcasieu National Bank of Lake Charles was the holder of mortgages on seven cotton gins and a warehouse situated in the parishes of Allen, Cameron, and Calcasieu. This mortgage indebtedness was not being reduced in a satisfactory manner, and the plan was conceived either by the bank or by the Thomsons of incorporating the business of the Thomson Gin Company and selling to that corporation the cotton gins and warehouse subject to the bank's mortgages.

In order that the bank might hold a note secured by a vendor's lien, the gins were first sold to the Thomson Gin Company, and, later, after the incorporation of that company, they were sold by the partnership, Thomson Gin Company, to the corporation, Thomson Gin Company, Inc., with a vendor's lien retained to secure the purchaser's note for $45,000.

The vendor's lien covered not only the seven cotton gins and the warehouse on which the bank held mortgages, but, also, the two unencumbered cotton gins former-ly owned by the partnership. The bank also obtained as additional security, a note for $30,000 from the Thomsons, and as security for that note, the individual note of J. S. Thomson for $20,000, secured by mortgage on the maker's individual property, in Jefferson Davis parish, and the individual note of Mark F. Thomson for $2,500 secured by the maker's individual property, in the city of Lake Charles.

At the time the transaction was first discussed, it was agreed that the Thomsons would assume the payment of $12,000 due on three of the cotton gins, and that the bank would effect the extension or payment of the mortgage loan, which was held by the Great Southern Life Insurance Company, of Houston, Tex. And it was further agreed that the whole plan of financing the transaction would extend over a period of five years, the bank advancing a sufficient amount of money for operating expenses. Shortly before it became due, the bank offered to lend the appellants the money with which to liquidate the mortgage indebtedness of $12,000, but appellants declined the offer, because the note had not yet matured. When the note matured a few months later, the bank was unable to obtain its extension or to advance the money to pay it, with the result that the mortgage was foreclosed and the mortgaged properties sold.

The Calcasieu National Bank of Lake Charles was reorganized and became the Calcasieu National Bank in Lake Charles. Upon its organization, the vendor's lien note of $45,000, together with demand notes of the appellants aggregating $34,756, were purchased by the new bank. Later, the new bank pledged the $45,000 vendor's lien note,

together with other collateral, to the National Credit Association as security for the repayment of a loan of $1,000,000. Among the collateral pledged to secure this loan was the $30,000 note of the Thomsons, with its collateral, the $20,000 mortgage note of J. S. Thomson and the $2,500 mortgage note of Mark F. Thomson.

Shortly after it had effected the loan with the National Credit Association, the Calcasieu National Bank in Lake Charles substituted other collateral for the $30,000 note of the Thomsons, with its collateral, and pledged them with other collateral, to secure a loan of $1,000,000 from the Reconstruction Finance Corporation. As additional security for this loan, the bank assigned to the Reconstruction Finance Corporation all its rights in the securities pledged to the National Credit Association.

■■ All the notes sued on were acquired by the pledgees before their maturities and without knowledge of any of the transactions between the bank and the Thomsons. Therefore, the pledgees occupied the position of innocent third holders of the mortgage notes, free of all equities or claims that might have existed in favor of the makers.

But after the notes sued on had matured, the Reconstruction Finance Corporation took up the loan of $1,000,000 made by the National Credit Association, renewed its own loan of $1,000,000, and lent the bank an additional $1,500,000, for which the bank executed one note for $3,500,000, representing its entire indebtedness. This transaction gives rise to the only question presented for decision in the case.

The appellants contend that the transaction represents a new loan, and that the Reconstruction Finance Corporation having acquired the mortgage notes pledged to secure the original loans after maturity, took them subject to all equities and defenses which the makers of the notes could urge against the Calcasieu National Bank.

■ The appellee, Reconstruction Finance Corporation, contends that the loan of $3,500,000 was merely a renewal of its prior loan of $1,000,000, for the security of which some of the mortgage notes had been pledged, and the payment of the $1,000,000 loan made by the National Credit Association, the holder of a prior pledge of the bank's collateral, which had the effect of subrogating the Reconstruction Finance Corporation, as the junior pledgee, to the rights of the National Credit Association as well as its own under the prior loans.

The Reconstruction Finance Corporation as an inferior pledgee of the collateral held by the National Credit Association under its prior pledge had an interest in discharging the bank's debt to that association and thereby becoming legally subrogated to its rights. Civ.Code, arts. 2161, 2162; Zeigler v. His Creditors, 49 La.Ann. 144, 21 So. 666; Walmsley v. Theus, 107 La. 417, 31 So. 869; Decuir v. Carnes, 173 La. 563, 138 So. 103.

■■ Novation is a contract consisting of two stipulations—one to extinguish an existing obligation, the other to substitute a new one in its place. Civ.Code, art. 2185. Novation is never presumed. Civ.Code, art. 2190.

■ The execution of a new note in renewal of an old note does not novate the debt or destroy the privilege securing the same. This is true even though additions of interest and other charges are made to the note. Davis v. Welch, 128 La. 785, 55 So. 372; Varnado v. W. B. Thompson & Co., 129 La. 15, 55 So. 693; Farmers' National Bank v. Belle Alliance Co., 142 La. 538, 77 So. 144; Carre Co. v. E. J. Stewart & Co., 166 La. 317, 117 So. 238; Bank of Coushatta v. Coats, 170 La. 163, 127 So. 587.

Defendant's contention of novation is not sustained by the evidence. No agreement to novate the debt is shown and novation cannot be presumed.

■ The note for $3,500,000 was not given by the bank to the Reconstruction Finance Corporation in payment of its loans, or under any agreement amounting to a novation. It was executed and delivered by the bank as a renewal and continuance of its old obligations. The new note represented three items of indebtedness aggregating $3,500,000. These items were, first, the balance due on the loan made by the National Credit Association; secondly, the indebtedness due the Reconstruction Finance Corporation on its prior loans; and, thirdly, the additional money lent the bank. The parties in executing the new note clearly did not intend that the existing indebtedness of the bank to the Reconstruction Finance Corporation should be thereby extinguished. The note was given and accepted merely to change the evidence of that indebtedness by substituting therefor a new note representing the total amount of the three items of indebtedness instead of three notes, each representing only one of those items.

Our conclusion is, that the judge of the district court correctly found that the Reconstruction Finance Corporation was a third holder in good faith before maturity for a valuable consideration of the notes involved in the suits under review, and that, as such, it is not subject to the equities or defenses the makers of the notes might have against the original holder.

■ The Reconstruction Finance Corporation has always retained possession of the pledged mortgage notes and other collateral. Neither the notes nor the loans which they were pledged to secure have been paid. Since the notes were given as collateral security for the payment of the loans, they must remain as such security until the loans are satisfied, unless the original parties agree to their surrender, or the pledgee in some way discharges or releases them.

For the reasons assigned, the judgments appealed from are affirmed.