187 So. 60

BROCK, State Bank Com'r, v. FIRST STATE BANK & TRUST CO. et al.

No. 34964.

Jan. 10, 1939.

Rehearing Denied March 6, 1939.

Benjamin M. Miller, of Covington, and Robert S. Ellis and Mary Purser, both of Amite, for appellants.

Ponder & Ponder, of Amite, for appellee.

HIGGINS, Justice.

The State Bank Commissioner, liquidator of the Tangipahoa Bank & Trust Company, as bona fide holder and owner

for value, in due course, before maturity, sued the First State Bank & Trust Company, in liquidation, and Charles H. Houlton, William L. Houlton and Richard A. Kent, in solido, for the sum of $115,529.20, the alleged balance due on the defendant bank's note, which was guaranteed by the three other defendants.

An exception of prematurity was filed by the guarantors on the ground that the holder of the note had to assert all of his remedies against the maker of the note before they could be held liable.

The district judge sustained the exception and dismissed the suit against the individual defendants.

This Court granted writs of certiorari, prohibition and mandamus on the plaintiff's application therefor, and annulled the judgment of the district court on the ground that the guarantors having unconditionally bound themselves, in solido, to pay the note at maturity, the holder of the note was entitled to sue them in solido with the principal debtor, without first exhausting all of his remedies against the maker of the note. We remanded the case for further proceedings. 187 La. 766, 175 So. 569.

The defendants answered, denying that the plaintiff had acquired the note for value, before maturity, and averred that under a clause in the mortgage, which was given as additional security for the note, it was stated that, although the note was to mature seven years after date, it would also become due and exigible in the event the interest payable thereon became delinquent for a period of twelve months,

and that such delinquency occurred in 1931; that the note had been paid in full and under the agreements pledging the securities, it was stipulated that upon the payment of the note the unused collateral and the mortgaged real estate were to be returned to the maker; that prior to, contemporaneous with, and subsequent to the execution of the act of guaranty there were other collateral agreements which provided that the guarantors were to be liable solely and only after a full and complete liquidation of the affairs of the debtor bank, even though the note had matured, and averred that the liquidation of its affairs was incomplete; that under these agreements with the Hammond State Bank, which purchased the banking house, fixtures, good will, bonds, etc., of the debtor bank, and advanced it $191,258.71 with which to pay its depositors, it was agreed that the Hammond State Bank would pay the debtor bank 4% interest on all deposits of public bodies aggregating approximately $2,000,000, the interest on which amounted to $160,000, and 2½% interest on all other deposits, the total of which is unknown, but on information and belief, it is asserted that an allowance of $5,000 should be given on this account, and these items should have been credited on the note, but they have never been entered; and that these agreements further contained a clause making it the duty of the Hammond State Bank to make the collections on the collateral pledged to secure the note. The defendants further pleaded that they were entitled to a credit on the note of $60,000, representing the purchase price of the debtor bank's build-

ing by the Hammond State Bank, and $15,000, covering the purchase price of certain equipment and accessories, etc., which were also bought by it; that plaintiff should render defendants a complete accounting; and that they were entitled to have the plaintiff's suit dismissed and the unused collateral and mortgaged property returned to the First State Bank & Trust Company, in liquidation, the maker of the note.

After the suit was filed, Richard A. Kent died, and his executors qualified. The Hammond State Bank, as a creditor, instituted a rule to require the executors to furnish an adequate bond securing the faithful administration of the estate. In order to avoid the large premium which would be due on such a bond, the Hammond Bank entered into an agreement with the widow and heirs of the deceased, under which they deposited certain securities valued at $170,000, in lieu of the bond, with the right to withdraw any of the securities upon replacing them with securities of equal value.

The two Houltons, as guarantors, pleaded estoppel as a result of this agreement, averring that their rights had been prejudiced thereby.

Before the trial of the case on the merits, the defendants filed a motion for a writ of subpoena duces tecum, alleging that certain records of the First State Bank & Trust Company, in liquidation, the Hammond State Bank and the Tangipahoa Bank & Trust Company were in the custody and possession of the Bank Commissioner, and that these records were necessary to the proper defense of their case; that the Bank Commissioner also had in his charge the collateral agreements, which would verify their statements.

In return to the writ, the Bank Commissioner pleaded that he was a bona fide holder for value, in due course, before maturity, of the note; that it had been pledged by the Tangipahoa Bank & Trust Company, in liquidation, for a loan to the Reconstruction Finance Corporation, as collateral, before maturity; that some of the documents requested by the defendants were annexed to and made a part of the petition and filed with it, some of them being recorded in the mortgage and conveyance offices; that the records of the First State Bank & Trust Company and the Hammond State Bank were not in the possession of the Tangipahoa Bank & Trust Company, in liquidation, but were in the custody of the liquidators of those institutions, and that the plaintiff should not be required to give an accounting of the collections which the agreement between the parties required the First State Bank & Trust Company to make and which were made by it.

From the beginning to the end of the trial, plaintiff's counsel objected to the introduction of any evidence tending to show equities between the original parties on the ground that his client was the bona fide holder in due course for value, before maturity, of the note. He further objected to the introduction of parol evidence which would tend to vary or change the terms and provisions of the written documents upon which the suit was based. The trial judge overruled all of these objections, with

reservation of the plaintiff's right, apparently concluding that, due to the long period of time (eleven years) that had elapsed since the making of the note and the involved nature of the transactions, it was better to have the whole case before him, for in the event the appellate court differed with him, it would be unnecessary to remand the case.

The record shows that an examination by the State Bank Commissioner's representative of the affairs of the First State Bank & Trust Company revealed the fact that its condition was precarious. Negotiations took place between the representatives of that institution and the Hammond State Bank with a view of selling most of its assets to the latter bank, in order that there might be a voluntary liquidation of the affairs of the former bank. The representatives of the respective banks, properly authorized, finally reached an agreement which was reduced to writing and signed on the 22d day of June 1926, whereby the Hammond State Bank agreed to purchase the bank building of the involved Bank for the sum of $60,000 cash, the fixtures and accessories for $15,000 cash, and was given the privilege of purchasing such other stocks, bonds and securities that might· be agreed upon. The Hammond State Bank agreed to loan the distressed bank $191,-258.71 for the purpose of paying off its depositors, it being understood that the loan was predicated upon an attached list of assets prepared by the vendor from its books, the correctness of which was personally guaranteed, in solido, by the three parties, who also guaranteed the payment of the note. The loan was to be evidenced by a negotiable promissory note, due seven years after date, bearing 6% interest from date, payable monthly, chargeable to the vendor's account carried with the vendee. In order to secure the loan, the assets enumerated in the list, which was guaranteed to .be accurate, were to be pledged as collateral security for the payment of the note and possession thereof to be delivered to the vendee on June 23, 1926, when the note was to be executed. As additional security, a mortgage was to be taken on all of the real estate owned by the defunct bank, a reasonable time being allowed for the examination of the titles to these properties, as well as the title to the bank building property. As further security for the note to be executed on June 23, 1926, the three individual defendants agreed to personally guarantee its payment in writing.

The note and the guaranty sued upon read, respectively, as follows:—

"Hammond La. June 25th, 1926.
"$191,258.71

"On or before Seven years, after· date for value received, I, we or either of us promise to pay to the order of Hammond State Bank One hundred ninety one Thousand two hundred Fifty eight and $^{71}/_{100}$ Dollars, with interest at the rate of six per cent per annum from date until paid.

"Payable at Hammond State Bank, Hammond, La.

"Interest payable monthly and defaulting interest to draw the same rate of interest,

as principal. The makers, endorsers and guarantors of the note guarantee to pay all costs of Collecting, including ten per cent attorney's fees, if placed in the hands of an attorney for collection. If not paid at maturity the principal and makers agree that any money on deposit or otherwise to his credit may be applied to the payment of this note. We hereby severally waive presentment of payment, notice of nonpayment, protest and notice of protest, and diligence in bringing suit against any party hereto and sureties consent that the time of payment may be extended without notice thereof.

"(Signed)   First State Bank & Trust Company of Hammond

"C. H. Houlton

"W. L. Houlton

"R. A. Kent, Liquidators.

"No. 5069 Due June 23, 1933."

"Hammond, La., June 23, 1926

"To the Hammond State Bank

"Hammond, La.

"In consideration of your loaning to the First State Bank & Trust Company the sum of One Hundred Ninety-one Thousand two hundred Fifty-eight and 71/100 Dollars ($191,258.71), to be evidenced by its note dated this day, bearing six per cent per annum interest, payable monthly.

"Each of the undersigned, to-wit: Richard A. Kent, William L. Houlton, and Charles H. Houlton, do hereby unconditionally bind ourselves in solido, to guarantee the payment of said note, less such amounts as you may credit thereon, before its maturity, from the liquidation of its assets.

"Respectfully submitted

"(Signed)   C. H. Houlton

"R. A. Kent

"W. L. Houlton

"Accepted:

"Hammond State Bank

"(Signed)   E. Richardson, Prest."

On July 2, 1926, the sale and mortgage of the real estate contemplated by the agreement were executed, registered and recorded. The proceedings having received the approval of the State Bank Commissioner, three liquidators were appointed by the stockholders to liquidate and settle the affairs of the failing bank. From time to time, as the representatives of the liquidators needed the pledged bills receivable, notes, etc., for the purpose of collection, they were delivered by the representatives of the Hammond State Bank to them, and after the collections were made, the expenses of and salary for collection by the liquidators' representative were deducted therefrom and the balance remitted and credited upon the payment on the principal and interest of the note. Some of the collateral was liquidated by direct payment to the Hammond State Bank and proper credits were allowed therefor. Matters continued in this way until the Hammond State Bank went into liquidation in 1932.

In 1932, the Tangipahoa Bank & Trust Company was organized, and it purchased the assets of the Hammond State Bank, in liquidation, including the note in question,

together with all the collateral securing it, before its maturity, but subject to the credits for payments on account of the note. Later the Tangipahoa Bank & Trust Co. went into liquidation, and in order to raise cash, the secured note sued upon was pledged to the Reconstruction Finance Corporation, as security for the loan. The payments made by the liquidators of the First State Bank & Trust Company and the payments received direct by the Hammond State Bank and the Tangipahoa Bank & Trust Company, on account of the note, were duly credited. The note having matured and there being a balance due, it was protested for nonpayment. The present suit was instituted on May 15, 1936.

It appears that the Tangipahoa Bank & Trust Company purchased the secured negotiable note in question, in due course, for value, before maturity, and that it was pledged by that institution to the Reconstruction Finance Corporation, as collateral for a loan, before maturity. Therefore, any equities which might exist between the original parties cannot be pleaded against plaintiff in this suit. Reconstruction Finance Corp. v. Holloway and consolidated cases, La.Sup., 186 So. 35; N.I.L., Act No. 64 of 1904, §§ 52, 58, 59.

The defendants' attempt to show that the note matured in 1931, because the interest was not paid for a period of twelve months, was unsuccessful, and the trial court properly rejected this defense.

The evidence is conflicting on the question of whether there were prior, contemporaneous or subsequent agreements limiting the liability of the guarantors. The defendants said that they had had several copies of these alleged agreements, but they were unable to produce a single one of them. The testimony of the plaintiff's witnesses that there were no such agreements is corroborated by the documentary proof and the conduct of the parties during the several years in which payments were being made on account of the note. For instance, at no time during that long period was any interest allowed on deposits of public bodies or other deposits, and yet there was no serious or written demand made that such items should be credited. An effort was made to show, by parol evidence, that the president of the Hammond State Bank verbally promised to make such entries but this statement was denied and the testimony is not convincing.

It further appears from the documentary evidence and the conduct of the parties, that the obligation of collecting the collateral pledged on the note was assumed by the liquidators of the First State Bank & Trust Company. The account rendered by the representative of the liquidators of this bank is cogent evidence of that fact and confirms the testimony of plaintiff's witnesses. While it is true that the officers of the Hammond State Bank and the Tangipahoa Bank & Trust Company cooperated in making collections by receiving some direct payments at their banking houses, these circumstances do not alter the fact that the responsibility of collecting the pledged collateral was definitely placed upon the liquidators of the selling bank. Their accounting shows that all expenses, fees, salary, costs and charges in connec-

tion with these transactions were deducted before remitting to the Hammond State Bank on account of the note. Furthermore, a clause in the mortgage unequivocably placed the obligation of collecting by suit or otherwise upon the First State Bank & Trust Company, in liquidation.

The defendants' claim for a credit of $17,000 for notes that were allowed to prescribe through the negligence of the plaintiff is without merit, for it was the duty of the liquidators of the vendor bank to institute these suits.

The claim for credits of $60,000, representing the purchase price of the vendor bank's building, and $15,000 covering the price of equipment and accessories is without any foundation, because the Hammond State Bank paid the selling bank these amounts in cash, as shown by the act of sale. Furthermore, it was testified that the note transaction was separate and distinct from the sale of the bank building, equipment, accessories and the bonds and securities, which the representatives of the Hammond State Bank elected to purchase for cash.

From the evidence, the trial judge was satisfied that the plaintiff had rendered an accurate accounting of all collections made and payments received upon the principal and interest of the note from the liquidators or representatives of the defunct bank and its debtors direct. His conclusions are supported by the record.

The plaintiff showed that after the suit was filed, certain remittances amounting to $783.13 were made, which should be credited on the note, reducing it to the sum of $114,966.48, after allowing interest credits.

The anomalous position taken by the defendants in requesting the plaintiff to produce records which they had possession and custody of and which were negligently mislaid or lost was properly denied by the trial judge. The return to the prayer for oyer convinced him that the plaintiff had produced all of the records in his possession, which were pertinent to the issues in the case, and it was not his duty to produce the records of the First State Bank & Trust Company, of which the defendants were the custodians.

The defendants also contend that as a result of the agreement dated March 8, 1927 between the widow and heirs of Richard A. Kent and the Hammond State Bank, whereby $170,000 of securities were deposited, in lieu of an administration bond, the guarantors were released from further responsibility because this transaction constituted a novation. It is said that it was the intention of the parties to supplant the act of guaranty, insofar as the Estate of Richard A. Kent was concerned, by the deposit of the securities. This is contrary to the testimony, as well as the terms of the act of deposit. The agreement shows that it was a mere acknowledgment of the contingent liability of the Succession of Richard A. Kent and the sole purpose of the agreement was to save an annual premium on a very large administration bond. None of the guarantors have in any way been prejudiced, placed at a disadvantage, or damaged in their right to demand a subrogation of all of the rights of the holder of

the note, in the event the guarantors or any of them pay the balance due on it. The plaintiff stands ready to make subrogation when payment is received. Novation is never presumed and this is particularly true where there has been no release of the original indebtedness or any part thereof, or the security. R. F. C. v. Thomson, 186 La. 1, 171 So. 553; Lee Tire & Rubber Co. v. Frederick-Planche Motor Co., La.App., 180 So. 143; Rev.Civ.Code, arts. 2185, 2190, 2232.

The plea of estoppel was based upon the fact that the other guarantors were prejudiced by the withdrawal of certain securities deposited by the executors of the Succession of Richard A. Kent. It was shown that a few securities, which had been withdrawn, were replaced with other stocks and bonds of equal value. No harm or damage was suffered by the defendant guarantors, but it appears that the deposit of the securities was more favorable to them than a mere administration bond. The plea of estoppel was correctly overruled.

The contention that the guaranty of the defendants was personal and unassignable is untenable, because the note and the guaranty show that they were both a part of the same transaction and were identified with each other, and that the note was a negotiable one. There was no restrictive provision in the guarantee limiting its benefits to the Hammond State Bank only. Certainly, it was the intention of the guarantors that, if the note were negotiated in accordance with its provisions, the guaranty followed the legal negotiation of the note and continued to secure it in the hands of a lawful owner. R. F. C. v. Mickelberry, 189 La. 105, 179 So. 49.

Counsel for the defendants rely upon the case of the Citizens' Bank & Trust Co. v. Barthet, et al., 177 La. 652, 148 So. 906. This authority is not in point, because under the facts, which are different from those in the instant case, the Court concluded that the guaranty was special and conditional and, therefore, could not be taken advantage of by the transferee bank.

In the case of Interstate Trust & Banking Co. v. Sabatier, et al., 189 La. 199, 179 So. 80, the Court held that the guaranty was not special and conditional but general and unconditional and subject to assignment to secure the principal obligation. There, the guarantors agreed that it was subject to assignment and, in the instant case, the guarantors, having agreed to pay the balance of the negotiable note at its maturity, cannot be said to have intended the agreement to be a special restrictive or conditional guaranty without expressly so designating it.

According to the transcript, our learned brother below allowed "8%" interest, when the note calls for interest at the rate of "6%." This error will be corrected.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be amended by reducing the rate of interest allowed thereon from eight (8%) per cent. to six (6%) per cent., and in all other respects the judgment is affirmed; appellants to pay all costs.

PONDER, J., takes no part.