J.L. Fitzhugh, the defendant herein and a resident of Grant Parish, Louisiana, bought two Chevrolet trucks from the Colfax Motor Company, Inc.; and for the unpaid balance of the purchase price of each he gave an installment promissory note secured by a vendor's lien and chattel mortgage on the truck represented.
The acts evidencing the mentioned security were recorded in the chattel mortgage records of Grant Parish, where they were executed, on December 16, 1939, and July 12, 1940, respectively.
Following their issuance and delivery, both notes, bearing the endorsement of the Colfax Motor Company, Inc., passed into the possession and ownership of the General Motors Acceptance Corporation, hereinafter referred to as G.M.A.C.
On September 27, 1940, Fitzhugh signed and presented to the White System of Alexandria, Inc., the plaintiff herein, a promissory note, the payment of which was also secured by a chattel mortgage, passed in Rapides Parish, affecting the mentioned trucks. Evidence of this encumbrance was placed of record in Grant Parish, on September 28, 1940, and in Rapides Parish, on December 19, 1940.
Another act of chattel mortgage covering the two vehicles was executed by the said Fitzhugh in Rapides Parish, on October 15, 1940, and was recorded in the Parishes of Grant and Rapides on the following day. It recited that the mortgagor, Fitzhugh, was indebted unto the Rapides Bank Trust Company in Alexandria in the sum of $1,397.35, and that in evidence of the indebtedness he had given his one note for that amount due thirty days after date.
On December 19, 1940, the White System of Alexandria, Inc., commenced this foreclosure action on the note and chattel mortgage given to it by defendant Fitzhugh, alleging a balance due of $1,110, with interest and attorney's fees, and asking judgment for that amount. A writ of sequestration issued, as prayed for, and thereunder the two trucks of defendant were seized.
Intervening in the proceeding, and opposing plaintiff's claim, was the Rapides Bank Trust Company in Alexandria, herein known as intervenor. It alleged that it held and owned an installment promissory note of defendant Fitzhugh, dated October 15, 1940, for $1,397.35, together with a collateral note for the same sum which was secured by a chattel mortgage on the seized movable property; and that $1,129.20 of such amount represented funds paid by it to G.M.A.C. as the balance due on the two secured notes held by that company, the result of which payment was its subrogation to the claim and rights of said G.M.A.C. against Fitzhugh. Another allegation of intervenor was that the chattel mortgage assertedly owned by plaintiff was not timely recorded in Rapides Parish, and was therefore inoperative in so far as it was concerned.
Intervenor prayed for judgment against defendant Fitzhugh for $1,397.35, with interest and attorney's fees; that its chattel mortgage be recognized; that it be further recognized as the subrogee to all of the rights formerly held by G.M.A.C. under the latter's described notes and mortgages; and that the mentioned sum be paid to it out of the proceeds of the sale by preference and priority over all other persons.
Defendant made no appearance, and default judgments against him were rendered *Page 557 
in favor of the herein litigating creditors for the full amounts of their respective claims.
According to the district judge's written reasons for judgment and also the briefs of counsel, the trial of the case, as it concerned plaintiff and intervenor, presented two controverted questions, namely, 1. Did the intervenor become subrogated to the two mortgages held by G.M.A.C.? 2. Was the chattel mortgage of plaintiff recorded so as to affect the rights of third parties?
The trial judge, on giving consideration to the first question, held that a legal subrogation of the G.M.A.C. mortgages, and all rights thereunder, had resulted in intervenor's favor; and as there was no dispute as to those encumbrances being superior to plaintiff's mortgage, judgment was rendered decreeing intervenor entitled to a preference payment of the sum of $1,129.20, with interest, attorney's fees and costs, from the proceeds of the sale of the seized trucks. The second question was not passed upon.
Plaintiff appealed from the judgment. Intervenor has neither appealed nor filed answer to the appeal of plaintiff.
Article 2159 of the Louisiana Civil Code declares that "subrogation to the right of a creditor in favor of a third person who pays him, is either conventional or legal."
Intervenor does not contend that a conventional subrogation of G.M.A.C.'s rights was effected in its favor. But it does insist, and the trial court concluded as above stated, that there occurred a legal subrogation, such as takes place of right, under the authority of Civil Code Article 2161, "for the benefit of him who, being himself a creditor, pays another creditor, whose claim is preferable to his by reason of his privileges or mortgages."
We find from the evidence in the record that defendant Fitzhugh, during the month of October, 1940, went to the banking establishment of intervenor and consulted its assistant cashier, Rupert T. Barber, about the refinancing of his indebtedness of $1,129.20 with G.M.A.C., regarding the payment of which he was delinquent. At that time he also owed intervenor $200, an amount previously borrowed.
Several days later, defendant, together with J.C. Murray, who was G.M.A.C.'s district representative, and H.O. Walters, the manager of the Colfax Motor Company, Inc., met with Barber at said bank for the purpose of effecting the desired refinancing. At this meeting, Fitzhugh signed a plain installment note for $1,397.35, this being the balance due on the G.M.A.C. indebtedness plus insurance on the trucks and certain costs. Also he executed in favor of intervenor the above mentioned note and chattel mortgage of date October 15, 1940, reciting a like amount, which served as collateral for the plain note. Intervenor accepted the negotiable paper; and then issued a cashier's check for $1,129.20, payable to General Motors Acceptance Corporation, and delivered it to the payee's representative who was present.
The check, which at no time was in defendant's possession, was sent to the office of G.M.A.C., and it was ultimately paid. In due course G.M.A.C. forwarded defendant's two notes, the outstanding balance on which was the amount of said check, to the Colfax Motor Company, Inc. This company, the day after receiving them, delivered the notes to intervenor. Across the back of each was stamped the word "cancelled"; however, the act evidencing the security therefor, that is each chattel mortgage executed in favor of G.M.A.C., was never erased from the mortgage records.
The above quoted provision from Civil Code, Article 2161, appropriately affects, in our opinion, the factual situation under consideration; and, hence, we are compelled to agree with the position taken by intervenor, as well as with the conclusion of the district judge, that a legal subrogation to the mortgage rights of G.M.A.C., admittedly superior to those of plaintiff, has resulted in intervenor's favor.
It was necessary, under such codal provision, that intervenor be a creditor on consummation of the transaction; and this status it so occupied. But its holding of a secured claim was not essential. The benefits afforded by that provision flow to all inferior creditors, irrespective of whether they are common or preferred. Zeigler v. His Creditors, 49 La.Ann. 144, 188, 21 So. 666; Walmsley v. Theus, 107 La. 417, 31 So. 869; Decuir et al. v. Carnes, 173 La. 563, 138 So. 103.
The appearance of the word "cancelled" on the back of each of the notes *Page 558 
is of no moment. It was placed there by a rubber stamp without the knowledge or consent of intervenor, and was ineffective against the latter. As stated by the district judge, it "was evidently done at the office, before returning the notes, by someone who knew nothing about the agreement of the parties."
A similar notation was written on the notes involved in the case of Walmsley v. Theus, supra. The court commented that the presence of the word "cancelled" would tend to disclose payment as between the maker and the holder of the notes; but that an inferior creditor making the payment to the holder could not prevent such writing, and he would not be prejudiced by it in the absence of consent to an absolute extinguishment of the obligation.
Neither do we think that G.M.A.C.'s forwarding of the notes to the Colfax Motor Company, Inc., instead of directly to intervenor, is of any great importance. This procedure was in accord with a custom of the holder, as shown by the testimony of the recipient's manager. Important and very significant, however, was the fact that this manager did not cause the erasure of the mortgages that secured their payment; instead he delivered the notes to intervenor which now holds them.
It is earnestly contended by counsel for plaintiff that the entire transaction amounted to nothing more than a borrowing of funds or the obtaining of a loan by defendant Fitzhugh from intervenor, and the payment by him, with those funds, of the G.M.A.C. notes; and that the result of his efforts was the settlement of the obligation and the extinguishment and cancellation of the attendant chattel mortgages. In support of this contention the case of Avant v. Hodge, 6 La.App. 290, is cited.
In the Avant case a mortgage note made and given by one Poston was held by a bank. Dr. Hodge lent to Poston certain funds which the latter used in paying and obtaining the note. This court held that the obligation was extinguished by Poston's payment; and, with reference to Dr. Hodge's contention that he had become legally subrogated to the bank's rights, commented: "Counsel's position might be well taken if Hodge had in fact paid the bank and had taken up the note; but, as already stated, Hodge did not pay the bank but merely loaned Poston the money with which to make the payment, and instead of his taking up the note the note went back into the hands of Poston, the maker and obligor."
In the instant case, intervenor did in fact pay the G.M.A.C. This was done by means of a cashier's check drawn to the latter's order and handed to its district representative by the bank's assistant cashier. Fitzhugh at no time possessed the check or the funds represented by it. Neither did he obtain from G.M.A.C. his notes; they passed, although indirectly, into the possession of intervenor, and they are still there.
As before stated, the district judge, in view of the conclusion reached, found it unnecessary to consider the second question that developed on the trial of the case. Likewise, it does not require our consideration.
The judgment appears to be correct and it is affirmed.