255 So.2d 625 (1971)
Yancy ANTOINE, Jr., et al., Plaintiffs-Appellees,
v.
ELDER REALTY COMPANY et al., Defendants-Appellants.
No. 3627.
Court of Appeal of Louisiana, Third Circuit.
December 2, 1971.
*626 Earl B. Taylor, Opelousas, for defendants-appellants.
Marion Overton White, Opelousas, for plaintiffs-appellees.
Before SAVOY, HOOD and MILLER, JJ.
HOOD, Judge.
Yancy Antoine, Jr., and his wife instituted this suit to cancel from the public records a special mortgage and vendor's lien held by Elder Realty Company on property in St. Landry Parish, and to recover the amount of an alleged overpayment of their indebtedness to defendants. The defendants are Elder Realty Company and its president, Joe Elder. The realty company reconvened to recover the balance allegedly due on plaintiffs' indebtedness to it. The trial court rendered judgment for plaintiffs, ordering the cancellation of any and all mortgages or vendor's liens which defendants may have of record against the property, and dismissing the reconventional demand of the realty company. Defendants appealed. We reverse.
The issues are: (1) Has plaintiffs' indebtedness to Elder Realty Company been paid? (2) Has the indebtedness been extinquished by accord and satisfaction? (3) Is Elder Realty Company entitled to recover the balance allegedly due on plaintiffs' indebtedness?
On April 13, 1961, Yancy Antoine, Jr., and Elder Realty Company entered into a "bond for deed" agreement, under the terms of which Elder Realty obligated itself to sell to Antoine a parcel of ground, with improvements, in St. Landry Parish. Antoine agreed to pay $2,500.00 for the property. Of this price, $100.00 was paid in cash, $50.00 was to be paid on April 24, 1961, and the balance of $2,350.00 was to be paid in 120 monthly installments of $28.51 each, bearing interest at 8 percent per annum from maturity until paid. The contract provided that after 36 monthly payments were made, Elder Realty would sell the property to Antoine by usual warranty deed, retaining a special mortgage and vendor's lien for the unpaid portion of the purchase price. Antoine was to pay all taxes and insurance premiums.
Antoine made a number of payments to the realty company to apply on the purchase price of this property. His payments, *627 however, were in irregular amounts, ranging from $10.00 to $114.00.
On July 1, 1965, more than four years after the first monthly payment became due, Elder Realty executed an authentic act of sale, conveying the property to Yancy Antoine for the agreed price of $2,176.46, that being the balance due by plaintiffs under the "bond for deed" contract, as shown on Elder Realty's ledger sheet. The purchase price was not paid when the sale was made, and the act provides that the vendor retains, and the purchaser grants, a special mortgage and vendor's lien on the property conveyed to secure the payment of the purchase price. The act of sale, with the mortgage and vendor's lien retained, was executed by Joe Elder, in his capacity as president of Elder Realty, and by Yancy Antoine, Jr., and his wife, Victoria B. Antoine.
As evidence of the buyer's indebtedness for the purchase price, Yancy Antoine executed a promissory note payable to Elder Realty Company for $2,176.46. The note is due and payable in monthly installments of $30.76 each, commencing August 1, 1965, and it provides for interest at the rate of 8 percent per annum thereon from date until paid, and 10 percent additional on the unpaid principal and interest as attorney's fees. It also provides that failure to pay any installment promptly at maturity shall, at the option of the holder, cause all remaining unpaid installments to become due. The note was paraphed for identification with the above mentioned act of sale and mortgage.
Yancy Antoine continued to make payments in irregular amounts after July 1, 1965, until sometime in 1969. Early in 1969, he engaged an attorney who wrote to Elder Realty on January 14, 1969, stating that Antoine had paid $2,849.30 as of December 13, 1968, and requesting information as to the balance due on the purchase price of the property. This letter was not answered in writing. An assertion that it was answered by telephone communication with plaintiffs' attorney was denied by the attorney.
Antoine, acting under the advice of his attorney, made a payment of $30.78 by check dated March 11, 1969, payable to "International Home Builders." The words, "complete payment," were written in the lower left corner of the face of the check. This check was endorsed for deposit by the payee, and was paid by the bank. The evidence does not show any connection between the payee of that check and Elder Realty, but all parties apparently concede that the payment actually was made to defendant.
Antoine made another payment of $35.78 to International Home Builders by check dated June 30, 1969. In the lower left corner of the face of this check there appear the words, "compleat payment in full." This check was also endorsed for deposit by the payee and was paid. No further payments were made by Antoine after the last mentioned date.
Antoine explained that the second of these checks was sent because the first one had not been returned to him and he feared a possible foreclosure. The check of March 11, 1969, shows, however, that it was endorsed for payment by the receiving bank on March 17, and that it was paid on March 18, 1969.
Antoine admitted that he made one payment between the dates the two above mentioned checks were issued, and that this payment was made by check containing no notation of any kind on it. Defendants contend that Antoine made three payments between those dates. Elder Realty's cashier testified that she always recorded payments on the days they were received, and that her ledger shows that Antoine made a payment of $30.70 on April 21, a payment of $30.78 on May 19, and a payment of $30.07 on May 26, 1969. None of these payments were made with a stipulation that it constituted payment in full.
This suit was filed on May 27, 1969, which was several weeks before the June *628 30, 1969, check was issued by Antoine as the final payment on his mortgage indebtedness. Although plaintiff stated that this last mentioned check was issued because his earlier check (dated March 11, 1969) had not been returned, he alleged in the petition which he filed before the last check was issued that "defendants have accepted a certain amount of money in full and complete payment of any and all amounts which may have been due said defendants by petitioners."
Plaintiffs contend that they have paid more than $3,000.00 to defendants since the original contract to sell was entered into on April 13, 1961. They take the position that this is more than sufficient to satisfy the indebtedness incurred under that contract, and that they are not now indebted to defendants for any additional sums of money.
We have decided that it is immaterial how much plaintiffs may have paid on the "bond for deed" contract prior to the time the act of sale was executed, because we believe that the agreement entered into by the parties on July 1, 1965, whereby the property was sold and a promissory note was executed by plaintiff for the agreed purchase price, constituted a novation of the debt.
Novation is a contract, consisting of two stipulations; one to extinguish an existing obligation and the other to substitute a new obligation in its place. LSA-C.C. art. 2185; Hartson, Inc. v. Brawley & Watson, Inc., 180 So.2d 588 (La.App. 1 Cir. 1965); Rex Finance Company v. Cary, 145 So.2d 672 (La.App. 4 Cir. 1962); Reconstruction Finance Corporation v. Thomson, 186 La. 1, 171 So. 553 (1936). Under Article 2189 of the Civil Code, novation may occur, among other ways, "when a debtor contracts a new debt to his creditor, which new debt is substituted to the old one, which is extinguished."
A novation, or the substitution of a new debt for an old one, is never presumed. LSA-C.C. art. 2190; Polk Chevrolet, Inc. v. Vicaro, 162 So.2d 761 (La.App. 1 Cir. 1964); McConnell Motors Company v. Tompkins, 4 So.2d 566 (La.App. 1 Cir. 1941); Parker v. Alexander, 2 La.Ann. 188 (1847). The determining factor is the intention of the parties. The intention to novate may be shown by the character of the transaction, and by the facts and circumstances surrounding it, as well as by the terms of the agreement itself. Midlo & Lehmann v. Katz, 195 So.2d 383 (La. App. 4 Cir. 1967); Sterlington Bank v. Terzia Lumber & Hardware, Inc., 146 So. 2d 233 (La.App. 2 Cir. 1962).
We have concluded that the parties in the instant suit, by executing the act of sale and mortgage dated July 1, 1965, intended to substitute the indebtedness evidenced by that agreement in place of the old indebtedness evidenced by the 1961 contract to sell. The note executed by Antoine in 1965 was for an amount different from that provided in the original contract. The payments on the 1965 note were to be $30.76 per month, instead of the smaller monthly payments required in the original contract, and the payments on the note were extended over a much longer period of time than that provided in the bond for deed contract. The note provides that interest is due from date, whereas the original contract provided that it was due from maturity. Plaintiff obligated himself to pay attorney's fees in the event the note is placed in the hands of an attorney for collection, whereas the original contract contained no such provision. And, the provisions contained in the act of mortgage relating to insurance and taxes, and to enforcing payment of that obligation, differ from those contained in the original contract. All of these provisions convince us that the parties intended to substitute the new indebtedness for the old one, and that the old debt, evidenced by the 1961 contract to sell, was extinguished. A novation thus was effected.
Since a novation took place with the execution of the act of sale and mortgage on *629 July 1, 1965, the question is presented as to whether the amount due on the promissory note given by Antoine in connection with that sale has been paid.
Elder Realty's bookkeeper, testifying from ledger sheets kept on plaintiffs' account, stated that payments totalling $1,658.65 have been made on that account since June of 1965. Of this amount, $1,101.59 was applied to principal and $557.06 was applied to interest. Defendant paid $105.37 as taxes and insurance, and that amount was added to the principal balance. Receipts offered into evidence by plaintiffs total slightly less than the amount with which they were credited by Elder Realty. It is clear, therefore, that plaintiffs' debt has not been paid in full, and, of course, there has been no overpayment.
Plaintiffs' principal contention, however, is that the acceptance of the checks of March 11 and June 30, 1969, constituted accord and satisfaction of the debt.
Three requirements must be met for an accord and satisfaction. They are: (1) An unliquidated or disputed claim; (2) a tender by the debtor in full settlement of the claim; and (3) acceptance of the tender as full payment by the creditor. National Screen Service Corp. v. Joy Threatres, Inc., 231 So.2d 417 (La.App. 4 Cir. 1970); Hebert v. D. Fruge, Contractor, Inc., 192 So.2d 574 (La.App. 3 Cir. 1966); Jones v. Standard Life & Accident Insurance Company, 129 So.2d 84 (La.App. 3 Cir. 1961); Davis-Wood Lumber Company v. Farnsworth & Company, 171 So. 622 (La.App. Orleans 1937).
To constitute an accord and satisfaction, the creditor must understand that if the payment is accepted, the claim will be deemed to have been paid in full. Jones v. Standard Life & Accident Insurance Company, supra; Selber Bros. v. Newstadt's Shoe Stores, 203 La. 316, 14 So.2d 10 (1943); Meyers v. Acme Homestead Ass'n, 18 La.App. 697, 138 So. 443 (La. App. Orleans 1931). See also 1 C.J.S. Accord and Satisfaction § 33, page 522.
We find that Elder Realty did not understand, and it had no reason to conclude, that the two checks in question were tendered as payment in full of Antoine's account. The evidence shows that Antoine frequently failed to make full monthly payments, and that he would accompany his payments with slips of paper indicating "part payment" or "full payment." The payment made by him on March 11, 1969, was the first payment which he made by check, all previous payments having been made by cash or money order. Elder Realty was justified in believing, therefore, that Antoine would make the same type notations on the face of his checks as he previously made on scratch paper accompanying the money orders. In view of the prior notations made by Antoine, it was logical for Elder Realty to assume that the notations "complete payment" or "compleat payment in full" merely meant that the entire amount of the monthly payment then due was being paid.
In addition, it is undisputed that Antoine made at least one payment between the dates of the two above mentioned checks, and that that payment was not accompanied by the statement that it constituted payment in full. Also, there was nothing in the letter from the Antoines' attorney to indicate that payment in full was to be forthcoming. We find, therefore, that the inscription on the two checks was insufficient to charge Elder Realty with notice that the checks were being tendered as payment in full, or that acceptance of the checks would constitute an acceptance of full payment of the indebtedness.
We are aware of cases in which acceptance of a check marked "payment in full" has been held to effect an accord and satisfaction. These cases are distinguishable, however, in that checks involved there were presented to the creditors in such a manner as to fully inform the creditors *630 that the payments were being tendered as full satisfaction of the debts.
Our conclusion is that the judgment of the trial court ordering the cancellation of the mortgages and vendor's liens must be reversed.
Finally, Elder Realty demands judgment against Antoine for $1,180.24, with interest at the rate of 8 percent per annum from July 1, 1969, until paid, and 10 percent of the entire amount as attorney's fees, that being the balance allegedly due on the promissory note executed by Antoine in 1965. The record contains the affidavit of Earl B. Taylor, attorney for defendants, attesting that the true balance due on the note is $1,180.24, with interest and attorney's fees as above set out. Elder Realty's ledger sheets show a balance due of $1,200.24, but this includes a $20.00 charge for legal expenses, which Elder Realty apparently concedes is not recoverable here. The company accountant testified that this was the balance due by Antoine as of the date of the trial, which was held on May 12, 1970. This balance is not seriously disputed by plaintiffs, whose only substantial contention is that the debt was settled by accord and satisfaction. We find that Elder Realty has proved its claim with sufficient certainty to warrant a judgment in its favor.
The judgment appealed from is reversed, and judgment is hereby rendered in favor of defendants and against plaintiffs, rejecting plaintiffs' demands. Judgment also is rendered in favor of plaintiff-in-reconvention, Elder Realty Company, and against defendant-in-reconvention, Yancy Antoine, Jr., for the sum of $1,180.24, with interest thereon at the rate of 8 percent per annum from July 1, 1969, until paid, and 10 percent additional on the aggregate amount of principal and interest as attorney's fees, and with full recognition and maintenance of the special mortgage and vendor's lien, affecting the property described in the above mentioned act of sale and mortgage, dated July 1, 1965.
All costs incurred in the trial court and on this appeal are assessed to plaintiff-appellee, Yancy Antoine, Jr.
Reversed and rendered.